**Peter P. WALLACE, Petitioner,**

v.

**Harold S. BROWN, Secretary of Defense, Clifford L. Alexander, Secretary of the Army, and Andrew J. Goodpaster, Superintendent United States Military Academy, Respondents.**

**No. 79 CIV. 3545.**

United States District Court,
S. D. New York.

Oct. 9, 1979.

Henry J. Boitel, New York City, Paul A. Kiefer, Washington, D. C., for petitioner.

Robert B. Fiske, Jr., U. S. Atty. by Stanley D. Davis, Asst. U. S. Atty., New York City, Francis Cooch, Major, Judge Advocate General Corps., Washington, D. C., for respondents.

OPINION ON MOTION

MOTLEY, District Judge.

I.  *Grounds for Motion Under Fed.R.Civ.P. 52(b), 59(e)*

Respondents have filed a motion under Fed.R.Civ.P. 52(b), 59(e) to amend the Findings of Fact and Judgment in *Wallace v. Brown,* No. 79 Civ. 3545 (S.D.N.Y. August 28, 1979).  Their grounds for this motion

are that this court was in error in finding that petitioner, Wallace, had completed his military service obligation incurred by his attendance at the University of Paris under the Olmsted Scholar Program [hereinafter the "Paris obligation"]. Respondents contend that petitioner did not complete his Paris obligation because AR 350–100–2(c) prohibits payback credit for civilian schooling. As a result, respondents argue, petitioner's American University tenure should not be considered as a partial fulfillment of the Paris obligation. Respondents also claim that the absence of a signed writing, mandated by 10 U.S.C. § 2603 and AR 621–7, does not affect the validity of the Paris obligation.

The motion is denied on the grounds that: 1) instead of seeking only to amend allegedly incorrect findings of this court, respondents go beyond the scope of Fed.R.Civ.P. 52(b), 59(e) by attempting to relitigate factual findings and present new legal theories based on evidence readily available, though not used, at trial; 2) there is no "manifest error;" respondents' present interpretation of AR 350–100–2(c) is not entitled to any controlling weight; and 3) respondents' failure to produce the required "signed agreement" invalidates the Paris obligation, furnishing an independent ground for this court's decision.

II. *Discussion*

(A) *Motions Under Fed.R.Civ.P. 52(b), 59(e)*

Respondents contend that they seek to correct "manifest error" in this court's findings of fact, a proper ground for a motion under Fed.R.Civ.P. 52(b), 59(e).

Fed.R.Civ.P. 52(b) provides:

*Amendment.* Upon Motion of a party made not later than 10 days after entry of judgment, the court may amend its findings or make additional findings and may amend the judgment accordingly. · · ·

Fed.R.Civ.P. 59(e) provides:

*Motion to Alter or Amend a Judgment.* A motion to alter or amend a judgment

shall be served not later than 10 days after entry of the judgment.

A court may grant a motion pursuant to Fed.R.Civ.P. 52(b), 59(e) to correct manifest errors of law or fact or to present newly discovered evidence. *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976). Addressing the scope of these rules, the *Evans* court stated:

Motions made under Fed.R.Civ.P. 52(b) and 59(a) are not intended merely to relitigate old matters nor are such motions intended to allow parties to present the case under new theories.

\*   \*   \*

It should be noted that Tiffany was on notice as early as entry of the comprehensive pretrial order that Evans claimed both sums. At no time during trial or in its extensive posttrial written argument did Tiffany present its duplication [of the award] argument. Tiffany, therefore, should not now be permitted to reopen and litigate this new theory.

416 F.Supp. at 244, 245.

Under the guise of seeking an amendment of this court's finding because of an alleged "manifest error," respondents, in fact, attempt to relitigate already-decided factual issues and present new legal theories based on evidence available, though not used, during trial. The applicable federal rules prohibit such attempts when the moving party has had a previous opportunity to advance such arguments at trial. Petitioner's completion of the Paris obligation is the issue respondents attempt to relitigate and the Querfeld Affidavit is the basis of respondents' ingenious legal theory that army regulations prohibit payback credit for civilian schooling. As in *Evans, supra,* where the moving party had remained silent during the trial about matters it subsequently presented in its motion to amend factual findings, respondents may not seize a second opportunity now to present arguments they neglected to advance during this trial.

**(B)** *Respondents' Argument*

█ Respondents rely on AR 350–100–2(c) for their claim that army regulations prohibit payback credit for civilian schooling, e. g., petitioner's American University education. AR 350–100–2(c) furnishes guidelines for computing the duration of compounded service obligations and sets a limit of four years. AR 350–100–2(c) states in part:

Service while attending an active duty course is not credited toward the obligated service incurred by the initial course.

Respondents argue that petitioner incurred a compounded obligation by undertaking two separate educational programs, the first as an Olmsted Scholar at the University of Paris, and the second as a student at American University. As such, petitioner's obligation incurred by the American University tenure is an "active duty course" not to be credited toward the Paris obligation.

To support this argument, respondents have proffered an affidavit of a Major Querfeld. In his affidavit, Querfeld disputes a statement made by a Major Guenther offered as evidence in the trial. Major Guenther had stated in a memo that: "Past Olmsted Scholars have resigned without fulfilling their obligations and in every case they were allowed payback credit for military schooling." (Guenther Memo) (Pet's Exh. 1). Major Querfeld has claimed that the quoted statement was erroneous because army regulations prohibit payback credit for both military and civilian schooling and, in the alternative, petitioner's American University schooling is not "military schooling." Using this evidence, respondents then conclude that petitioner's time at the American University could not be credited towards the Paris obligation and, as a result, the Paris obligation is not completed.

Respondents clearly had the opportunity to raise this argument at the trial. Major Querfeld, presumably, was as readily available then as he is now. Furthermore, this court extensively discussed AR 350–100–2(c) and the difficulty in computing the compounded service obligation in petitioner's situation (Opinion at 12–13). The sole argument respondents offered at trial on the issue of compounded service obligations was that the simple rule of three days military service for each day of educational training controlled the duration of petitioner's service obligation. (Opinion at 13–14). In addition, respondents did not contest the validity of the Guenther Memo on grounds other than relevance. (Opinion at 15).

Respondents have relied on the three-for-one argument during the trial. Now, having lost on the merits of this argument, respondents should not be allowed to jettison a losing argument, perform legal legerdemain, and switch horses in midstream by presenting a novel legal argument that they had ample opportunity to present during the trial. Rules 52(b) and 59(e) surely do not contemplate such a procedure. Respondents do not deserve a second chance.

**(C)** *Ambiguous and Conflicting Regulations and Orders*

█ Even if respondents have presented proper grounds for a motion pursuant to Fed.R.Civ.P. 52(b) and 59(e), they have not, in their presentation of additional evidence, proved a "manifest error" necessary for this court to grant their motion to amend the Findings of Fact and Judgment. Since findings of fact of a trial court are entitled to presumptive validity both on appellate review and in proceedings to amend factual findings and judgment, the moving party has a heavy burden to establish factual error sufficiently serious to merit an amendment. *Cf. Anderson v. Federal Cartridge Corp.,* 156 F.2d 681 (8th Cir. 1946). Respondents have not discharged this burden.

Central to this court's opinion was the conclusion that the ambiguous and conflicting regulations and orders offered no clear guidelines for a determination of the length of petitioner's service obligation. The orders petitioner received for his Washington schooling revealed an inherent conflict (Opinion at 11–12) and no guidelines existed to compute a compounded obligation. Ad-

ditional evidence, such as the Guenther Memo, revealed that the Army had encountered difficulties in computing the length of the service obligation in cases similar to that of petitioner. As this court has stated:

> Though not qualified to enunciate or formulate official Army policy, Major Guenther was, the court finds, equipped to observe and describe the actual implementation of that policy by virtue of his official responsibilities. It is thus clear that the service obligations of Olmsted Scholars were not uniformly and consistently enforced in all cases, and that an Army official charged with the responsibility of interpreting the relevant regulations (AR's 621–1, 621–7, and 350–100) was unable to do so without encountering the very ambiguity of which petitioner complains.

(Opinion at 16).

In their argument that AR 350–100 prohibits payback credit for petitioner's American University schooling, respondents, in spite of themselves, again illustrate the inherent ambiguity of the Army's regulations and orders governing petitioner's service obligation. Assuming that AR 350–100 applies to petitioner,[1] AR 350–100 prohibits payback credit for an "*active duty* course of instruction." (emphasis supplied). No language in this or any other army regulation marks a distinction between military and civilian schooling. Respondents argue that petitioner's Paris obligation is fulfilled only if the American University training is "military schooling." (Resp. Br. at 15–17). The enabling statutory provision for educational programs undertaken by members of the Armed Forces and the regulations promulgated thereunder also fail to distinguish between military and civilian education programs.

> Each member of the Armed Forces who accepts a fellowship, scholarship, or grant in accordance with subsection (a) shall

. . . agree in writing that, after he completes the education or training, he will serve on active duty for a period of at least three times the length of the period of the *education or training.* (emphasis supplied). 10 U.S.C. § 2603(b). When notified that the fellowship, scholarship, or grant has been awarded, the member will immediately forward

> \*     \*     \*

> (5) Signed statement to the effect that member will remain on active duty for a period of at least three times longer than the period of training . . . . AR 621–7, ¶ 7(e).

As this statute and regulation illustrate, there is no basis in law for respondent's essentially arbitrary distinction between military and civilian schooling for payback credit. Nor have respondents demonstrated any consistent practice for granting payback credit to Olmsted Scholars. Querfeld's statement in the affidavit that the army has selectively waived the service obligation for past Olmsted Scholars highlights the very arbitrary and capricious action that this court seeks to prevent.

A re-examination of the Guenther Memo reveals the arbitrariness of respondents' distinction between military and civilian educational programs and the inconsistent application of army regulations for service obligations. Major Guenther, in his memo, stated that Major McChristian, another Olmsted Scholar, received payback credit for only military service. McChristian attended a university in France from June 1, 1967 to July 11, 1970, resulting in a service obligation of six years and three months, to terminate in October 1976. McChristian also attended Princeton from August 2, 1972 to November 1, 1973, or approximately fifteen months. Major Guenther stated that McChristian has fulfilled his service obligation 100% and recommended accept-

1. AR 350–100 contains an exception, as this court noted in its opinion at 13, that refers to AR 350–100, which applies to: "Officers who are authorized to accept fellowships, scholarships, or grants under the provisions of AR 621–7. Petitioner's Paris obligation was cover- ed by AR 621–7 and is within the exception to the four year maximum limit on a military service obligation. Since it is within this exception, no other regulations offer guidance to the computation of petitioner's compounded service obligation.

ance of McChristian's resignation. Since this recommendation occurred prior to November, 1977, the date to which the service obligation would have extended had no payback credit been granted, it appears that McChristian received payback credit for his civilian schooling.

■ Thus, no manifest error appears in this court's finding that petitioner's Paris obligation was completed. Respondents have failed to prove a consistent, regular practice of denial of payback credit for civilian schooling, proof necessary to support a finding of manifest error. As this court found with respondents' first three-for-one argument, this court similarly finds that respondents' current interpretation of AR 350–100–2(c) has not been applied consistently to past Olmsted Scholars. Consequently, this interpretation cannot control this court's determination of the duration of petitioner's Paris obligation. *Cf. Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). As this court has previously noted, army regulations, such as AR 350–100, are essential terms of petitioner's contract with the Army. Governed by ordinary contract principles, contractual ambiguities, such as those inherent in the application and interpretation of AR 350–100–2(c), must be construed against the drafter. *See United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). Because the Army has not consistently applied respondents' interpretation of AR 350–100, respondents' interpretation is not controlling and this court declines to accept respondents' invitation to amend its finding. Respondents have not carried their burden of proof of manifest error. Their motion is denied.

(D) *Signed Statement*

■ Even if this court were constrained to accept respondents' interpretation of AR 350–100, respondents still have not produced the signed statement required by 10 U.S.C. § 2603(b) and AR 621–7, ¶ 7(e). The signed statement is essential for imposing the military service obligation on petitioner

arising from his period of educational training at the University of Paris. Petitioner's vague idea of a possibility of a service obligation incurred as a result of his training at the University of Paris is no substitute for the absence of a signed statement that recognizes and cements the military service obligation. Since respondents have not produced this signed statement, petitioner had no military service obligation at the outset.

By persisting in its failure to produce this signed statement, respondents failed to comply with the legal requirements for imposing a valid service obligation based on educational training for active duty armed service members. As this court has stated (Opinion at 9), when the government has not complied with its own regulations and statutes, any action taken is illegal and of no effect. *Vitarelli v. Seaton*, 359 U.S. 535, 545, 79 S.Ct. 968, 975, 3 L.Ed.2d 1012 (1950).