In re Mario J. DeVITO, t/a DeVito's Landscaping, Debtor.

Philip E. BEARD, Trustee, Plaintiff,

v.

Kimberlee DeVITO; and Mario J. DeVito, Defendants.

Bankruptcy No. 87–1416.
Adv. No. 89–0242.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 21, 1990.

Joseph E. Fieschko, Pittsburgh, Pa., for debtor/defendant.

Stanley B. Lederman, Pittsburgh, Pa., for defendant Kimberlee J. DeVito.

Philip E. Beard, Trustee, William T. Molczan, Stonecipher, Cunningham, Beard & Schmitt, for plaintiff/trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is the Trustee's *Complaint To Recover Fraudulent Conveyances* pursuant to 11 U.S.C. § 548(a). He seeks to avoid and/or recover for Debtor's estate the value of four (4) parcels of real estate transferred by Defendant Mario J. DeVito ("Debtor") to Defendant Kimberlee

DeVito, his wife, pursuant to a Marriage Dissolution Agreement ("Agreement").

The Trustee claims that the transfers were made with the actual intent on the part of Debtor to hinder, delay, or defraud his creditors, in violation of 11 U.S.C. § 548(a)(1). Alternatively, the Trustee maintains that Debtor received less than reasonably equivalent value in exchange for the transfers and was either insolvent at the time of the transfers or became insolvent as a result thereof, in violation of 11 U.S.C. § 548(a)(2)(A)–(B)(i).

Defendant Kimberlee DeVito denies that the transfers were made with actual intent to hinder, delay, or defraud Debtor's creditors. She further denies that Debtor received less than reasonably equivalent value in exchange for the transfers.

Judgment will be entered in favor of the Defendants and against the Trustee for reasons set forth below.

## I.

### FACTS

Debtor and Kimberlee DeVito were married on April 23, 1976. During their marriage, the parties acquired interests in several parcels of real property by entering into three (3) installment land contracts for the purchase of multi-unit apartment buildings located in Pittsburgh, Pennsylvania.

Specifically, on December 16, 1981, the parties executed contracts to purchase a dwelling at 351 Stratford Avenue for $66,000.00. On January 6, 1984, they executed a contract to purchase dwellings at 350 and 115 Stratford Avenue for $77,750.00 and $53,750.00, respectively. Finally, Defendants purchased a dwelling at 3062 Brereton Street for $8,000.00 in May of 1984.

On October 7, 1986, Debtor and Kimberlee DeVito executed a Marriage Dissolution Agreement. Pursuant to the Agreement, Debtor transferred to Kimberlee DeVito all of his right, title, and interest in the aforementioned four (4) parcels of real estate. Kimberlee DeVito agreed to be solely responsible for all mortgage, tax, utility, and other payments, costs, and expenses associated with the properties.

Concurrently, Kimberlee DeVito transferred to Debtor all of her right, title, and interest in three (3) business-related dump trucks. In addition, Kimberlee DeVito transferred to Debtor all of her right, title, and interest in DeVito Landscaping, which became the sole and exclusive property of Debtor.

In December of 1986, Debtor and Kimberlee DeVito were granted a divorce in the Court of Common Pleas, Family Division, of Allegheny County, Pennsylvania.

Debtor filed a voluntary Chapter 7 petition in this Court on May 15, 1987. On June 1, 1987, Plaintiff Philip E. Beard, Esq., was appointed Chapter 7 Trustee.

## II.

### ANALYSIS

11 U.S.C. § 548(a) provides in pertinent part:

> The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (1) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ..., indebted, or
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and
>
> (B)(i) was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer ...;

The one-year reachback period is an integral element for each of the substantive provisions of section 548(a). 4 *Collier on Bankruptcy*, ¶ 548.02[2], p. 548–25 (15th ed. 1989). It is undisputed that the transfers at issue in this case occurred within one year of the filing of Debtor's bankruptcy petition.

#### A. *Section 548(a)(1)*

█ It is insufficient for purposes of § 548(a)(1) to show only that a transfer had

the effect of defrauding certain creditors or was made in preference to other creditors. *In re Prestige Spring Corp.*, 628 F.2d 840, 842–43 (4th Cir.1980) (construing 11 U.S.C. § 67(d)(2)(d) of former Bankruptcy Act). As the statutory language expressly provides, *actual* intent to defraud must be shown.

■ A fraudulent transferror will rarely, if ever, disclose their fraudulent intent in a way that is susceptible of direct proof. Actual intent may be established through circumstantial evidence which is such as to preclude any reasonable inference other than that the purpose of the transfer was fraudulent as to creditors. 4 *Collier on Bankruptcy*, ¶ 548.02[5] at pp. 548–38—548–89 (15th ed. 1989).

Application of § 548(a)(1) must not be mechanical:

> The elements productive of that intent ... can never be defined. They vary as do facts, and any judge or jury, dealing with facts by some rule of thumb, will always miss the human touch. Testimony can never be tested or weighed by machine.

*Richardson v. Germania Bank*, 263 F. 320 (2nd Cir.1919), *cert. den.*, 252 U.S. 528, 40 S.Ct. 393, 64 L.Ed. 727 (1920).

■ The ultimate burden of establishing all of the required elements which render a transfer fraudulent under the Bankruptcy Code lies in this case with the Trustee. 4 *Collier on Bankruptcy*, 548–10 at p. 548–122 (15th ed. 1989). Specifically, the Trustee must prove, by clear and convincing evidence, that the challenged transfers were made with actual intent to hinder, delay, or defraud Debtor's creditors.[1] *See*, e.g., *In re Metro Shippers*, 78 B.R. 747 (Bankr.E.D.Pa.1987); *Matter of Warner*, 65 B.R. 512 (Bankr.S.D.Ohio 1986); *Phillips v. Wier*, 328 F.2d 368, 371 (5th Cir. 1964).

■ The Trustee has failed to establish, even by a fair preponderance of evidence, that the transfers at issue here were made with actual intent by Debtor to hinder, delay, or defraud his creditors. To the contrary, the circumstances strongly indicate that marital relations between Debtor and Kimberlee DeVito were severely strained and that the equitable distribution of property set forth in the Agreement was intended solely to facilitate the termination of their marriage. No thought was given, when the Agreement was executed, to its effect on Debtor's creditors. Certainly, no thought was given on Debtor's part to benefit his estranged wife to the detriment of his creditors.

### B. *Section 548(a)(2)(A)–(B)(i)*

■ The manifest purpose of this provision is to establish a test of constructive, as opposed to actual, fraud. It is a test of law, as distinguished from fraud in fact. If the conditions necessary for this provision are present, there is a *conclusive* presumption of fraud. 4 *Collier on Bankruptcy*, ¶ 548.03 at 548–50 (15th ed. 1989).

The Trustee has the burden of proving each of the following:

(1) a transfer occurred;

(2) the transfer was of an interest of the Debtor in property;

(3) the transfer occurred within one year of the filing of the bankruptcy petition;

(4) debtor received less than reasonably equivalent value; and

(5) debtor was insolvent or became insolvent as a result of the transfer.

*In re Thames*, 21 B.R. 704, 705 (Bankr.D.S. C.1981).

There is no dispute relating to the existence of the first three (3) elements.

---

**1.** It was stated in *Chorost v. Grand Rapids Factory Showrooms*, 77 F.Supp. 276, 280 (D.N.J.1948), *aff'd*, 172 F.2d 327 (3rd Cir.1949), that actual intent to hinder, delay, or defraud need be proved only by a preponderance of the evidence. A careful reading of the opinion by the Court of Appeals, however, indicates that the question of the required *quantum* of proof was not raised on appeal. Consequently, the affirmance does not necessarily imply that, in this Circuit, the *quantum* of proof is only a preponderance of the evidence. This Court is convinced that clear and convincing evidence of actual intent to hinder, delay, or defraud is required.

The Bankruptcy Code does not define "reasonably equivalent value". Several cases, all of which involved noncollusive foreclosure sales of real property belonging to a debtor, have devised various methods for determining whether reasonably equivalent value was received. Although a foreclosure sale is not involved here, these cases nonetheless are illuminating.

Perhaps the most widely-used method is the so-called *"Durrett 70% rule"*. In *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980), it was held that payment of $115,000.00 at a foreclosure sale for real property which had a fair market value of $200,000.00, or only 57.7% of fair market value, was not a "fair equivalent". In so doing, the court made the following observation:

> We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack ... which has approved the transfer for less than 70 percent of the market value of the property.

*Id.* at 203.

Although the above remark was merely *dictum*, it has been adopted by several courts which have held that a transfer is fraudulent for purposes of section 548(a)(2) unless at least 70% of the fair market value of the property is realized at the foreclosure sale. *See, e.g., IPI Liberty Village Associates v. Spalding Corners Associates*, 92 B.R. 882, 884 (Bankr.W.D.Mo. 1987); *Cole v. Sovran Mortgage Corp.*, 81 B.R. 326, 331 (Bankr.E.D.Pa.1988); *In re Butler*, 75 B.R. 528, 531 (Bankr.E.D.Pa. 1987).

A second group of cases has expressly rejected the *Durrett* 70% rule and has held instead that a regularly conducted, noncollusive foreclosure sale is conclusively presumed to yield reasonably equivalent value for the property transferred. The leading case for this holding is *In re Madrid*, 21 B.R. 424 (9th Cir. BAP 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.), *cert. den'd*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). The so-called *"Madrid rule"* has been adopted by several other courts. *See, e.g., In the Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985); *In re Verna*, 58 B.R. 246 (Bankr. C.D.Cal.1986); *In re Upham*, 48 B.R. 695 (Bankr.W.D.N.Y.1985); *In re Strauser*, 40 B.R. 868 (Bankr.N.D.Ohio 1984).

Yet a third approach has expressly rejected both *Madrid* and *Durrett* and has taken the position that the determination whether reasonably equivalent value has been received depends on all of the facts and circumstances of the case. *See Matter of Bundles*, 856 F.2d 815, 824 (7th Cir. 1988).

This Court is convinced that the approach set forth in *Bundles* is the best reasoned approach and is convinced that it is most appropriate in the present case.

The Trustee's claim brought pursuant to this section also must fail. Debtor, at the very least, received reasonably equivalent value in exchange for the four properties which he transferred to Kimberlee DeVito.

It has been noted that Defendants had purchased four (4) parcels of real estate during their marriage. The total purchase price of these four (4) properties was $205,-500.00.

The Trustee's expert appraiser testified as follows concerning the value of each of the properties as of October of 1986. Specifically, he stated that 350 Stratford consisted of five (5) apartment units worth $17,000.00 each, and that the property was worth $85,000.00; that 351 Stratford consisted of five (5) apartment units worth $16,000.00 each, and that the property was worth $80,000.00; that 115 Stratford consists of five (5) apartment units worth $13,-000.00 each, and that the property was worth $65,000.00; and that 3062 Brereton was worth $14,000.00.

Defendants offered evidence that the properties were worth somewhat less. Specifically, Defendant in giving her opinion as to fair market value, pointed to the assessed value for tax purposes placed on the properties by the Allegheny County Board of Property Assessment, Appeal and Review. Said values, as of October of 1986, are as follows: 350 Stratford was worth $67,000.00; 351 Stratford was worth

$62,000.00; and 115 Stratford was worth $57,000.00.

The precise value of the four (4) properties as of October of 1986 cannot be ascertained with precision. It does appear, however, that the values assigned by the Trustee's expert are questionable for several reasons. Initially, his appraisals were based on inspections made in February of 1990, not in October of 1986. Moreover, his appraisals were based entirely on inspections of the exteriors of the properties. The interiors of the properties were not inspected. As for one or possibly two of the Stratford Avenue properties, even if his assigned value of $16,000.00 per apartment unit is accepted, the proposed overall value of the property is too high, as there are only four (4), not five (5), apartment units per building. As for 3063 Brereton property, the expert conceded that the property would be worth considerably less if the interior of the building had been damaged by vandals. Unbeknownst to the expert, the interior had been extensively damaged by vandals.

The overall market value of the four (4) properties, as of October of 1986, lies somewhere between the value proposed by the Trustee, i.e., $244,000.00, and the value proposed by Defendants, i.e., $190,800.00. The overall market value of the properties was most likely slightly in excess of $200,000.00.

Pursuant to the Agreement, Kimberlee DeVito also assumed the mortgages on all of the properties. The following principal amounts were owed on the Stratford Avenue properties as of October 6, 1986:

350 Stratford Avenue: $ 71,710.00
351 Stratford Avenue:    50,310.00
115 Stratford Avenue:    46,826.00

Defendants purchased 3062 Brereton in May of 1985 for $8,000.00 in cash. However, since the dwelling was in extremely poor condition and was in need of major repairs, Defendants borrowed $15,000.00 from a bank and granted it a mortgage on the property in May of 1986. All told, the amounts still owed on the properties as of October of 1986 was approximately $183,846.00. Accordingly, the equity value of the aforementioned properties approximates $16,154.00.

Pursuant to the Agreement, Kimberlee DeVito transferred her right, title, and interest to certain vehicles. The only evidence of record concerning the values of these vehicles as of October of 1986, was provided by Kimberlee DeVito, who stated that the Chevrolet C30 was worth $7,500.00 and the Chevrolet Dump Truck was worth $6,500.00. She also testified that Debtor had purchased the 1979 Ford Dump Truck in 1981 for $4,000.00, and had spent an additional $3,500.00 to convert it into a dump truck. Based on this substantially uncontroverted testimony, the Court finds that the overall value of these vehicles as of October of 1986 was approximately $18,000.00.

Kimberlee DeVito also transferred to Debtor all of her right, title, and interest in DeVito's Landscaping, which was operated by Debtor. DeVito's Landscaping had been established by Debtor in 1976, and Defendant had served as bookkeeper for the business until their divorce.

No attempt was made to establish the value of the interest transferred to Debtor when Defendant transferred to Debtor her rights therein. Consequently, it cannot be said with any exactitude what the value of the interest transferred might have been as of October of 1986. It is known, however, that DeVito's Landscaping was a profitable business at that time. In 1985, $45,000.00 in pre-tax profits was earned. In 1986, $85,000.00 was earned. This business appeared to have value as of the date of transfer.

Based on the above, it would appear that the total value of the property which Kimberlee DeVito transferred to Debtor pursuant to the Agreement approximated and/or conceivably exceeded the value of the property transferred by Debtor to her. Debtor *did* receive reasonably equivalent value for the property which he transferred. The Trustee's action brought pursuant to 11 U.S.C. § 548(a)(2)(B)(i) therefore also must fail.

An appropriate Order will be issued.

**534**

## ORDER OF COURT

AND NOW at Pittsburgh this 21st day of March, 1990, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED that judgment is entered in favor of Defendants Kimberlee J. DeVito and Mario J. DeVito and against Plaintiff Philip E. Beard, Trustee.