### In re PITTSBURGH CUT FLOWER COMPANY, INC., Debtor.

### COMMITTEE OF UNSECURED CREDITORS FOR PITTSBURGH CUT FLOWER COMPANY, INC., Plaintiff,

v.

### Byron H. HOOPES, Defendant.

Bankruptcy No. 89–2680–BM.
Adv. No. 90–0281–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 30, 1991.

**454**

Mark L. Glosser, Pittsburgh, Pa., for plaintiff/committee of Unsecured Creditors.

Gary W. Short, Pittsburgh, Pa., for defendant/Byron H. Hoopes.

Stanley E. Levine, Campbell & Levine, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a Complaint filed by The Committee Of Unsecured Creditors ("Committee") of Pittsburgh Cut Flower Company, Inc. to recover preferential and/or fraudulent transfers and to subordinate claim of Byron H. Hoopes ("defendant"). The Committee alleges that Pittsburgh Cut Flower Company, Inc. ("debtor") purchased defendant's partnership interest for $100,000.00 and that debtor had paid defendant $33,000.00 of that amount shortly before debtor filed for bankruptcy.

The Complaint consists of four (4) counts. The Committee seeks in Counts I, II and III to recover these payments. In Counts I and III, the Committee seeks to recover on the theory that the payments constituted fraudulent transfers pursuant to 11 U.S.C. § 548(a)(2)(A)–(B)(i) and 39 P.S.A. §§ 354 and 355 (Pennsylvania Fraudulent Conveyance Act), respectively. In Count II, the Committee seeks to recover on the theory that the payments constituted preferential transfers pursuant to 11 U.S.C. § 547(b).

In Count IV, the Committee seeks to have defendant's general unsecured claim for the unpaid portion of the purchase price (i.e., $67,000.00) equitably subordinated, pursuant to 11 U.S.C. § 510(c)(1), to the claims of other general unsecured creditors.

Defendant denies that the Committee is entitled to any of the relief it seeks. With respect to Counts I and III, defendant contends that debtor received reasonably equivalent value and fair consideration in return for the payments. With respect to Count II, defendant denies that the Committee is entitled to avoid and recover the initial payment of $25,000.00 because the payment was made 90 days prior to the bankruptcy filing and because defendant was not an "insider". In addition, defendant avers the payment was not for an antecedent debt. Defendant further maintains that the remaining $8,000.00 in payments was for a debt incurred in the ordinary course of business.

With respect to Count IV, defendant denies that his general unsecured claim for $67,000.00 should be equitably subordinated because there was no showing of improper conduct on his part concerning his participation in the partnership or debtor's purchase of his interest therein.

In accordance with the analysis set forth below, judgment will be entered for the Committee and against debtor in the amount of $8,000.00 and all other prayers for relief in Counts I, II, and III will be dismissed. In addition, the Committee's prayer that defendant's general unsecured claim be equitably subordinated will be rejected.

### I

### FACTS

On November 6, 1986, debtor and defendant executed a contract ("partnership agreement") whereby a limited partnership known as U.S. Rentals Self Storage, Limited Partnership, was created. The stated principal purpose of the partnership was to acquire and develop real property for the construction of mini-warehouses and storage facilities in Florida and then to sell them to third parties for a profit.

Defendant was designated in the partnership agreement as managing general partner and owned a forty percent (40%) interest in the partnership. Debtor was desig-

nated as a limited partner and owned the remaining sixty percent (60%) interest.

The partnership agreement further provided that any sale of partnership property —i.e., the mini-warehouses—required the approval of partners owning seventy-five percent (75%) or more of the partnership. In effect, the approval of *both* debtor (60%) and defendant (40%) was required before a sale could take place.

In addition, the partnership agreement provided that defendant could be removed as managing general partner by partners owning 60% of the partnership. In other words, defendant could be removed unilaterally as managing general partner at any time by debtor.

Finally, the partnership agreement provided that net cash proceeds resulting from any sale of partnership property were to be distributed to the partners in accordance with their respective partnership interests. Debtor was to receive 60% and defendant the remaining 40%.

Defendant provided no capital for the partnership. His contribution instead consisted of researching and planning the projects and in designing, developing, and managing them once they had been constructed. The capital needed to fund the partnership was provided exclusively by debtor. All told, debtor ultimately provided $840,000.00.

The partnership eventually acquired three (3) sites in Florida on which it intended to construct the mini-warehouses. Subsequent thereto, arrangements were made by the partnership for construction financing. Debtor, a principal of debtor, and defendant personally guaranteed repayment of the loans.

Three mini-warehouses subsequently were constructed and placed in operation. Pursuant to the terms of the partnership agreement, all three mini-warehouses were managed by defendant.

Debtor avers that shortly after the mini-warehouses were constructed, it wanted to sell them even at break-even prices and engaged in negotiations with potential buyers. Defendant, however, exercised his veto power under the partnership agreement and refused to consent to any proposed sale as he desired to gain a profit from the transaction. To resolve the stalemate, debtor and defendant executed an addendum ("addendum") to the partnership agreement on November 4, 1987, which effected two salient changes in the relationship.

Specifically, the provision that any sale of partnership property required the approval of partners owning 75% or more of the partnership was deleted in its entirety. The effect of the deletion was to give debtor the sole discretion to determine whether to sell partnership property.

In addition, the provision that net cash proceeds resulting from the sale of partnership property was to be distributed to the partners in accordance with their respective partnership interests was amended. The addendum provided that defendant would receive a minimum of $300,000.00 in the event of a sale of all three (3) properties and a minimum of $100,000.00 per property in the event they were sold separately.

On June 30, 1988, debtor and defendant executed an amendment ("second amendment") to the partnership agreement. It provided, among other things, that defendant would resign as general partner and would become a 40% limited partner. It further provided that defendant would receive 40% of the net profits of the partnership.

On July 18, 1988, debtor and defendant executed a second amendment ("third amendment") to the partnership agreement. It provided that, effective July 1, 1988, defendant resigned as managing general partner and no longer was entitled to management fees. It further provided that defendant would have no liability as general partner as of July 1, 1988.

Debtor and defendant executed an agreement ("purchase agreement") on May 30, 1989, whereby debtor purchased defendant's 40% limited partnership interest for $100,000.00. It was agreed that debtor would pay defendant $25,000.00 by June

15, 1989 and would pay the remaining $75,-000.00 in monthly installments of $2,000.00.

On June 9, 1989, debtor paid defendant $25,000.00 in accordance with the provisions of the purchase agreement.

On June 10, 1989, debtor executed and delivered to defendant a promissory note ("note") in the amount of $75,000.00, the unpaid balance of the total purchase price set forth in the purchase agreement. Debtor promised to pay defendant the sum of $2,000.00 on July 15, 1989, and a like amount on the fifteenth (15th) day of each succeeding month until the outstanding principal balance was paid in full.

Pursuant to the terms of the note, debtor made the following installment payments to defendant:

| Date | Amount |
|------|--------|
| July 12, 1989 | $ 2,000.00 |
| August 7, 1989 | 2,000.00 |
| October 2, 1989 | 4,000.00 |
| Total | $ 8,000.00 |

Debtor sold two of the three mini-warehouses to Silver Star Associates in August of 1989 for $4.225 million. Debtor did not realize a profit on the sale of these properties. Rather, it lost in excess of $100,-000.00. Bay Financial Savings Bank foreclosed on its mortgage on the third property before debtor was able to sell it. There is a possibility of a deficiency judgment for which debtor, debtor's principal and defendant are potentially responsible, based upon their guarantee.

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 1, 1989.

On March 13, 1990, the Committee was authorized by Order of Court to bring the present action, which it brought on June 25, 1990.

Finally, on January 7, 1991, defendant filed a proof of claim in the amount of $67,000.00, the unpaid balance of the note executed by debtor on June 10, 1989.

## II

## COUNTS I and III

The Committee seeks in Counts I and III to avoid and to recover $33,000.00 paid to defendant pursuant to the purchase agreement and note on the theory that said payments were fraudulent transfers pursuant to 11 U.S.C. § 548(a)(2)(A)–(B)(i) and 39 P.S.A. §§ 354 and 355 (Pennsylvania Fraudulent Conveyance Act), respectively.

A.) *Fraudulent Transfers Under The Bankruptcy Code*

11 U.S.C. § 548(a) provides in pertinent part that:

> The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> \* \* \* \* \* \*
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer ...; and
>
> > (B)(i) was insolvent on the date that such transfer was made ...; or became insolvent as a result of such transfer ...;
>
> \* \* \* \* \* \*

The purpose of this provision is to provide a test of constructive, as opposed to actual fraud. If the required elements of this provision are established, a *conclusive* presumption of fraud arises. *See* 4 Collier on Bankruptcy ¶ 548.03 at 548–50 (15th ed. 1990).

The Committee has the burden of proving each of the following required elements with respect to its claim in Count I:

(1) that a transfer occurred;

(2) that the transfer was of an interest of the debtor in property;

(3) that the transfer occurred within one (1) year of the filing of the bankruptcy petition;

(4) that the debtor received less than reasonably equivalent value; and

(5) that debtor was insolvent or became so as a result of the transfer.

*In re DeVito*, 111 B.R. 529, 531 (Bankr.W. D.Pa.1990).

There is no dispute as to the first three elements. Defendant does not deny that debtor transferred $33,000.00 of its own funds to him within one (1) year of the bankruptcy filing. Defendant does, however, dispute elements (4) and (5). He maintains that debtor received reasonably equivalent value in exchange for the payments and denies that debtor was insolvent or became insolvent as a result of the payments.

■ The Bankruptcy Code does not define "reasonably equivalent value". Whether reasonably equivalent value has been received depends on the particular facts and circumstances of a given case. *Matter of Bundles*, 856 F.2d 815, 824 (7th Cir.1988); *In re DeVito*, 111 B.R. at 532.

B.) *Pennsylvania Fraudulent Conveyance Act*

39 P.S.A. § 354 (Purdon's 1954) provides as follows:

Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

■ At least two requirements must be established in order for an obligation incurred to be fraudulent under this provision: lack of fair consideration and insolvency. *In re Glenn*, 108 B.R. 70, 74 (Bankr.W.D.Pa.1989).

39 P.S.A. § 355 (Purdon's 1954) provides as follows:

Every conveyance made without fair consideration, when the person making it is engaged, or is about to engage, in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors, and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent.

■ Consideration given in exchange for an obligation incurred is "fair" when it is given as a fair equivalent and in good faith. *See* 39 P.S.A. § 353(a) (Purdon's 1954); *also, First National Bank of Marietta v. Hoffines*, 429 Pa. 109, 239 A.2d 458, 463 (1968).

■ If the person conveying the property was in debt at the time of the conveyance—i.e., owed a legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent—the burden shifts to the transferee to prove, by clear and convincing evidence, either that the transferor was not rendered insolvent as a consequence or that fair consideration was given for the conveyance. *First National Bank of Marietta*, 239 A.2d at 462.

C.) *Analysis of Claims In Counts I and III*

■ The Committee's claims in Counts I and III fail for basically the same reason: debtor received reasonably equivalent value and fair consideration in return for the $33,000.00 in payments to defendant.

According to the provisions of the original partnership agreement executed on November 6, 1986, debtor effectively could veto any sale of partnership property proposed by debtor. In addition, the agreement provided that defendant had a 40% interest in the partnership and was to receive 40% of the net profits of any sale of partnership property.

As has been noted, debtor, for reasons of self-interest, was eager to sell one or more of the partnership properties. Defendant, however, for reasons of self-interest, refused to approve any sale proposed by debtor.

The addendum executed on November 4, 1987 attempted to resolve the problems arising out of the partnership agreement. Defendant's ability to veto any proposed sale of partnership property was deleted. The net effect of this deletion was that debtor, as the holder of 60% of the partnership interest, had sole discretion to determine whether to sell partnership property. Defendant, however, did not relinquish the power to veto a sale without gaining something in return. Defendant was to receive

a guaranteed minimum of $100,000.00 per property in the event the properties were sold separately. Defendant in effect relinquished his right to receive 40% of the net profits from any sale of the properties while still retaining his 40% interest in the partnership.

Debtor resumed its quest to sell the properties after the addendum had been executed but was still unable to sell them. Although defendant had relinquished his veto power and debtor had sole discretion in deciding whether to sell partnership properties, debtor nonetheless could not (or would not) sell them because it did not desire to pay defendant in accordance with the distribution provision contained in the addendum.

Defendant's entitlement to receive any distribution at all upon sale of the properties was derived from the original partnership agreement and the amendments thereto. However, his entitlement to a guaranteed minimum upon sale of the properties (as opposed to 40% of the net profits from a sale), as set forth in the addendum, still was contingent upon there being a sale. He would receive nothing unless and until a sale occurred.

The purchase agreement of May 30, 1989 was executed by debtor in order to remove what it believed to be the final obstacle to selling the properties. Debtor purchased defendant's 40% limited partnership interest for $100,000.00, thereby eliminating defendant's entitlement to any distribution upon sale of the properties.

Defendant, did not, however, gratuitously relinquish his partnership interest and the right to receive a distribution from the sale of the properties. In return for agreeing to this, defendant was to receive $100,000.00 from debtor regardless of whether the partnership was able to sell the properties. In other words, defendant's right to receive payment was no longer contingent upon sale of the properties. He was to receive payment in accordance with the schedule set forth in the purchase agreement and note.

On June 9, 1989, debtor paid defendant $25,000.00 in accordance with the terms of the purchase agreement. Debtor also executed a promissory note the next day, whereby it promised to pay the remaining $75,000.00 in monthly installments of $2,000.00. Debtor paid the sum of $8,000.00 pursuant to promissory note during the 90–day period prior to its bankruptcy filing.

The most reasonable inference to be drawn from this complex sequence of events is that debtor did receive reasonably equivalent value and fair consideration in return for the $33,000.00 it paid to defendant.

In exchange for these payments, debtor was entitled to retain all of the net profits, if any, from sale of the properties. In addition, debtor reduced the amount to which defendant was entitled from a minimum of $300,000.00 in the event of a sale of all three properties or a minimum of $100,000.00 per property in the event they were sold separately. As has been noted, debtor eventually sold two of the properties. Thus, had it not purchased defendant's partnership interest, debtor would have had to pay him $200,000.00. Finally, debtor removed the last obstacle posed by defendant to debtor's selling of the properties. As has been noted, defendant's entitlement to receive a minimum of $300,000.00 upon sale of all three properties had effectively prevented their sale because debtor did not desire to pay that amount to defendant. This last obstacle was removed by purchasing defendant's partnership interest for $100,000.00.

In the words of a principal of debtor, it purchased defendant's partnership interest "to stop the bleeding". The fact that debtor ultimately lost money when it sold two (2) of the properties is immaterial. Neither § 548 of the Bankruptcy Code not the Pennsylvania Fraudulent Conveyance Act requires that debtor make a profit on those sales in order for there to be reasonably equivalent value or fair consideration. Defendant relinquished his right and potential in an arm's-length transaction instituted by his corporate partner. He gave and received reasonably equivalent value and/or fair consideration.

III

## COUNT II

The Committee seeks in Count II to avoid the $33,000.00 paid to defendant on the theory that the payments were preferential pursuant to 11 U.S.C. § 547(b).

The payments to defendant can be avoided pursuant to 11 U.S.C. § 547(b) only if it can establish that:

(1) that a transfer of debtor's property occurred;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt owed by the debtor before the transfer occurred;

(4) made while the debtor was insolvent;

(5) made on or within 90 days before the filing of the petition, or between one (1) year and 90 days before the filing of the petition if the creditor is an insider; and

(6) the transfer enables the creditor to receive more than it would receive if:

(A) the case were brought under Chapter 7 of the Code;

(B) the transfer had not occurred; and

(C) the creditor received payment for such debt to the extent provided by the Code.

*In re Hartley,* 825 F.2d 1067, 1069 (6th Cir.1987).

While defendant does not dispute elements (1), (2), (4) and (6) with respect to the initial payment of $25,000.00 made on June 9, 1989, he does deny that elements (3) and (5) are satisfied. Specifically, he denies that said payment was for an antecedent debt and that he was an insider of debtor.

As for the three (3) remaining payments in the amount of $8,000.00, defendant does not deny that all of the above elements are present. He nonetheless contends that these payments may not be avoided because they were for a debt incurred by debtor in the ordinary course of business and were made according to ordinary business terms. *See* 11 U.S.C. § 547(c)(2).

A.) *The Initial Payment of $25,000.00*

■ The initial payment of $25,000.00 was made on June 9, 1989, approximately 112 days prior to the filing of debtor's petition on October 1, 1989. Unless defendant qualifies as an "insider" under the Code, this particular transfer may not be avoided.

Debtor in this case is a corporation. The description of "insider" under the Code where the debtor is a corporation is as follows:

(30) "insider" includes—

\* \* \* \* \* \*

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor ...

11 U.S.C. § 101(30)(B).

None of these six categories is descriptive of defendant's relationship to debtor. At the time the purchase agreement was executed, defendant was a limited partner in a partnership with debtor as its general partner. The Committee acknowledges this but argues that defendant nonetheless qualifies as an insider of the debtor because he was a partner along with debtor in U.S. Rentals.

This contention is without merit. The nature of the relationship between debtor and defendant compels the conclusion that the latter was not an insider of the former.

The above definition of "insider" contains the word "includes". When the word "includes" is used in the Code it is not limiting in scope. *See* 11 U.S.C. § 102(3). Consequently, the six categories of corporate insider set forth at 11 U.S.C. § 101(30)(B) are not exhaustive.

■ The definition of "insider" under the Code is flexible and not amenable to precise formulation. An insider is any person or entity whose relationship with a

debtor is sufficiently close that any transactions between them ought to be subjected to closer scrutiny than those occurring at arm's length. *In re Dan–Ver Enterprises, Inc.*, 86 B.R. 443, 449 (Bankr.W.D. Pa.1988).

Defendant's relationship with debtor in this case was *not* sufficiently close that his dealings with debtor ought to be subjected to closer scrutiny. His relationship with debtor at times was almost adversarial. As previously stated, defendant was, for various reasons, in a position to thwart debtor's efforts to sell partnership properties. In short, and in a limited respect, defendant enjoyed a negotiated position of strength *vis-a-vis* debtor. This, without more, does not justify characterizing him as an insider of debtor.

Moreover, the partnership, as originally created, was between relative strangers whose mutual needs had brought them together for a specific business purpose. Any advantage that defendant ultimately derived from the original partnership agreement and subsequent agreements was achieved through arm's-length transactions. Clearly, at the date of initial execution of the agreements and through the various amendments, defendant was in no position to exercise dominion and control over debtor. To the contrary, debtor was a corporation having assets and employees available to pursue its position. Defendant was merely one person who, in this one instance, had leverage to have his way.

It would be inappropriate in light of these circumstances to characterize defendant as an insider of debtor. To the contrary, had the Code defined "outsider" surely it would be defendant. Consequently, the attempt to avoid the initial payment of $25,000.00 must fail because it was made to a non-insider more than 90 days prior to the filing of debtor's bankruptcy petition.

B.) *The Remaining Payments of $8,000.00*

As has been noted, defendant must concede that all of the elements required for a preferential transfer are satisfied with respect to these payments. He instead maintains that they re not avoidable because they were for a debt incurred by debtor in the ordinary course of business and were according to ordinary business terms. *See* 11 U.S.C. § 547(c)(2).

The following elements must be established in order for a transfer to fall under the "ordinary course of business" exception at 11 U.S.C. § 547(c)(2):

(1) that the transfer was in payment of a debt incurred in the ordinary course of business or financial affairs of both parties;

(2) that the transfer was made in the ordinary course of business or financial affairs of both parties; and

(3) that the transfer was made according to ordinary business terms.

*Fidelity Savings & Investment Co. v. New Hope Baptist*, 880 F.2d 1172, 1177 (10th Cir.1989).

Defendant has the burden of proving that these transfers are nonavoidable under 11 U.S.C. § 547(c). *See* 11 U.S.C. § 547(g). All of the above elements must be established by a preponderance of the evidence. *In re Metro Communications, Inc.*, 95 B.R. 921, 930 (Bankr.W.D.Pa.1989).

Section 547(c) is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and debtor's transferee. 4 Collier on Bankruptcy ¶ 547.10 at 547–48 (15th ed. 1990):

[Its] purpose is to leave undisturbed normal financial relations because [so doing] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 373 (1977); S.Rep. No. 989, 95th Cong., 2d Sess, 88 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5874, 6329.

Section 547(c) should be narrowly construed. *In re First Software Corp.*, 81 B.R. 211, 213 (Bankr.D.Mass.1988).

This determination is peculiarly factual. Attention must be directed to the

conduct of the parties involved. "Ordinary" contemplates what is ordinary *with respect to them. Id.* Among the factors that may be relevant in making this determination are: (1) the prior course of dealing of the parties; (2) the amount of the payments; (3) the timing of the payments; and (4) the circumstances surrounding the payments. *Id.*

 The circumstances recounted above indicate that defendant has failed to establish, by a fair preponderance of the evidence, that the remaining $8,000.00 in payments were in payment of a debt incurred by debtor in the ordinary course of business of debtor and defendant. In other words, defendant has failed to establish the first of the three required elements previously enumerated.

To the contrary, the evidence indicated that the debt in question was incurred under *extra* ordinary circumstances. The debt was incurred by debtor when it finally removed the final obstacle posed by defendant when debtor agreed to purchase defendant's partnership interest for $100,-000.00. Said debt was *not* incurred in the ordinary course of either debtor's floral business or its participation in the partnership with defendant. Rather, the debt was incurred in order to *extricate* from the untenable position in which it had placed itself when the partnership was created.

The Committee will be permitted to avoid and recover these payments because all of the elements for a preference are satisfied and because defendant has failed to establish that said payments were in satisfaction of a debt incurred by debtor in the ordinary course of business of the parties.

## IV

### COUNT IV

The Committee seeks in Count IV to have defendant's general unsecured claim for the unpaid balance of the purchase price for his partnership interest—i.e., $67,-000.00—equitably subordinated pursuant to 11 U.S.C. § 510(c)(1), to the claims of other general unsecured creditors.

Both debtor and defendant had executed personal guarantees on behalf of the partnership when it acquired financing for the construction of the mini-warehouses. The Committee alleges that debtor will, in the future, pay on said guarantee and, therefore, debtor will have a claim for contribution against defendant. The Committee further speculates that any distribution to defendant as a general unsecured creditor will be dissipated before debtor seeks contribution from defendant.

Defendant denies that his claim should be subordinated pursuant to 11 U.S.C. § 510(c)(1) because there was no improper conduct on his part either with respect to his participation in the partnership or debtor's purchase of his interest therein.

Statutory authority for equitable subordination is provided for at 11 U.S.C. § 510(c)(1), which provides in relevant part as follows:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part an allowed claim to all or part of another allowed claim ...

 Like any other equitable relief, subordination is not to be granted freely. *In re Dan–Ver Enterprises, Inc.,* 86 B.R. at 448. A claim may be equitably subordinated only if three required elements are established, to-wit:

(1) that the claimant has engaged in inequitable conduct;

(2) that said conduct has injured other creditors or given unfair advantage to the claimant; and

(3) that subordination of the claim is not inimical to the policies of the Bankruptcy Code.

 The burden and sufficiency of proof in such matters is not uniform in all cases. Where the claimant is an insider or fiduciary, the party seeking subordination has the burden of producing material evidence of unfair conduct. *In re Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir.1980). Once this burden has been met, the claim-

ant then must prove the fairness of his transactions or the claim will be subordinated. *Id.* However, where the claimant is *not* an insider or fiduciary, the party seeking subordination must prove with particularity more egregious conduct, such as fraud, spoilation, or overreaching. *In re N & D Properties, Inc.,* 799 F.2d 726, 731 (11th Cir.1986).

 It has already been determined that defendant was not an insider of debtor. In addition, there is no evidence that he was a fiduciary with respect to debtor. Consequently, if the Committee is to prevail in Count IV, it must establish with particularity that defendant engaged in something more egregious than merely unfair conduct.

The Committee has failed to establish that defendant engaged in egregious conduct of any kind. Although defendant undoubtedly occupied a position of advantage *vis-a-vis* debtor, and exploited it to his advantage, such position was attained through a series of arm's-length transactions which debtor ultimately came to regret. Defendant's claim was the product of a hard-earned advantage which he had legitimately acquired. There was nothing egregious about the means employed by defendant in achieving that advantage. In fact, a reading of the documents viewed in light of the testimony shows a diminution of defendant's status and position. A strong argument can be offered that debtor foisted this decline upon defendant.

The Committee's attempt in Count IV to have defendant's claim equitably subordinated to the claims of other general unsecured creditors must therefore fail.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 30th day of January, 1991, in accordance with the foregoing Memorandum Opinion of this same date, it is ORDERED, ADJUDGED and DECREED that judgment is entered in favor of the Committee of Unsecured Creditors for Pittsburgh Cut Flower Company, Inc. and against defen-

dant Byron H. Hoopes in the amount of $8,000.00. All other prayers for relief in Counts I, II, and III are dismissed.

IT IS FURTHER ORDERED that the Committee's request in Count IV that defendant Hoopes' general unsecured claim for $67,000.00 be equitably subordinated, pursuant to 11 U.S.C. § 510(c)(1), to the claims of other general unsecured creditors be and is denied.