**In re BFP, a Partnership, Debtor.**

**BFP, a Partnership, Appellant/Plaintiff,**

**v.**

**IMPERIAL SAVINGS & LOAN ASSO-CIATION, a California corpora-tion, Appellee/Defendant.**

**BAP No. CC–90–1712–JVP.**
**Bankruptcy No. SA–89–06771–JR.**
**Adv. No. SA–89–0977–JR.**

United States Bankruptcy Appellate Panel, for the Ninth Circuit.

Argued and Submitted March 20, 1991.

Decided Nov. 5, 1991.

Roy Woolsey, Newport Beach, Cal., for appellant/plaintiff.

Edward G. Schloss, Los Angeles, Cal., for appellee/defendant.

Before JONES, VOLINN and PERRIS, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

Appellee/Defendant Imperial Savings & Loan Association ("Imperial") sold real property at a foreclosure sale. Thereafter Appellant/Plaintiff BFP filed its Chapter 11 petition and brought an adversary suit to avoid the sale as a § 548(a)(2) transfer for less than reasonably equivalent value. Imperial moved for and was granted summary judgment. BFP appealed. We AFFIRM.

## BACKGROUND

In 1987 several parties got together to buy the home of Sheldon and Ann Foreman in Newport Beach, California, planning to remodel and sell it. Wayne Pedersen was to be the purchaser, but after the property entered escrow the agreement was orally changed. Instead of Wayne Pedersen being the sole buyer, a partnership, BFP, was formed.[1] On August 27, 1987, the Foremans deeded the property to Wayne and Marlene Pedersen, who on the same day deeded the property to BFP. Wayne Pedersen borrowed $356,250[2] from Imperial and BFP borrowed $200,000[3] from the Foremans to make the purchase—both loans were secured by deeds of trust.

Despite the fact that the Pedersens had conveyed the property to BFP, they subsequently conveyed the property to another entity, Off–Road Vehicles—Recreation & Family Campground, Inc. ("Off–Road"). BFP and the Foremans brought suit against Off–Road in state court to quiet title.

Before the state court could decide the case, Imperial entered a notice of default under the first deed of trust and scheduled a properly noticed foreclosure sale. Off–Road prevented the sale by filing an involuntary Chapter 11 petition against BFP. BFP moved to dismiss the involuntary petition, and Imperial moved to lift stay. Both motions were granted on or about June 14, 1989, and the subject property was sold to third parties at a foreclosure sale, apparently without further notice, on July 12, 1989.

Three months later the state court ruled on the quiet title action, rescinding the conveyance between the Foremans and the Pedersens. Thereafter BFP filed a voluntary Chapter 11 petition and brought the instant adversary suit seeking to nullify the foreclosure sale as a transfer for less than reasonably equivalent value under § 548(a)(2).

Imperial moved for summary judgment. The bankruptcy court granted the motion, holding that reasonably equivalent value was received at the foreclosure sale and that the foreclosure sale was "regularly conducted."[4]

## ISSUE

Whether the bankruptcy court erred in granting Imperial's motion for summary judgment, holding that reasonably equivalent value was received at the foreclosure sale.

## STANDARD OF REVIEW

We review the granting of a motion for summary judgment *de novo. E.g., In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990). We review issues of fact for clear error, and conclusions of law *de novo. Pullman–Standard v. Swint,* 456 U.S. 273, 277, 102 S.Ct. 1781, 1784, 72 L.Ed.2d 66

---

1. The BFP partnership originally consisted of Wayne and Marlene Pedersen and Russell Barton.

2. This loan was secured by a first deed of trust, apparently with Wayne Pedersen as trustor and Imperial's predecessor in interest as beneficiary. The deed was recorded August 25, 1987.

3. This loan was secured by a second deed of trust, apparently with BFP as trustor and the Foremans as the beneficiaries.

4. The bankruptcy court also held that BFP lacked any interest in the subject property: if the Pedersens had no interest in the property, then BFP had no interest in the property. The court failed to recognize that the same could be said of Imperial's interest in the property. Therefore, we hesitate to use the state court rescission to determine the interests of these parties or to dispose of this appeal.

(1982); *Vesey v. United States,* 626 F.2d 627, 629 (9th Cir.1980).

## DISCUSSION

### *Reasonably Equivalent Value*

■ BFP argues that the foreclosure sale should be invalidated or damages awarded pursuant to § 548(a)(2). BFP argues that the subject property was worth in excess of $700,000, and that the sale price of $433,000 was not reasonably equivalent value.

The BAP has previously held:

A non-collusive and regularly conducted nonjudicial foreclosure sale prior to the filing of a bankruptcy case cannot be challenged as a fraudulent conveyance because the consideration received in such a sale establishes "reasonably equivalent value" as a matter of law.

*In re Madrid,* 21 B.R. 424 (9th Cir.BAP 1982), *aff'd,* 725 F.2d 1197 (9th Cir.1984), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984).[5] In other words, the price received at the foreclosure sale is, by definition, reasonably equivalent value unless the foreclosure sale is not "regularly conducted," or unless there is collusion.

### *Regularly Conducted Foreclosure Sale*

■ BFP argues that it did not receive proper notice of the foreclosure sale.[6] Since the bankruptcy case had been dismissed, proper notice is determined by looking to California law.

The bankruptcy court made the following findings of fact with respect to the foreclosure sale:

A Notice of Default was recorded on July 29, 1988. A Trustee's sale was originally scheduled for December 29, 1988. Notice of the Sale was published for three consecutive weeks as required by the laws of the State of California.

\* \* \* \* \* \*

Imperial did not have any business relationship with the third party purchasers at any time prior to the Trustee's Sale of the subject property, nor did Imperial receive any benefit by virtue of the fact that the property was purchased by a third party at the Trustee's Sale.

*Appellant's Excerpts* at 244–45. BFP does not challenge these findings, but merely states that it received no notice. Pursuant to California law, publication for three consecutive weeks is sufficient notice, even under the facts of this case where the sale was postponed due to bankruptcy, and not renoticed after bankruptcy. *See Lupertino v. Carbahal,* 35 Cal.App.3d 742, 746–747, 111 Cal.Rptr. 112, 115 (1973).

■ BFP next argues a kind of estoppel, stating that it was misled by Imperial into believing that the foreclosure sale would not be held until the state court proceedings had concluded:

Russell Barton's declaration showed that after the hearing on the involuntary petition (the prior petition) filed by Off–Road, he heard the attorney for appellee [Imperial] say that they would not have the foreclosure sale until after the hearing in the pending quiet title action set for July 17, 1989....

*Appellant's Opening Brief* at 11. Such an argument does not state a claim for estoppel. Furthermore, Imperial denies that there was a verbal agreement, and further argues that a verbal agreement to continue a trustee's sale is unenforceable under California law. *Appellee's Opening Brief* at 22–23. (quoting *Karlsen v. American Sav. & Loan Ass'n,* 15 Cal.App.3d 112, 121, 92 Cal.Rptr. 851, 856 (1971)).

---

5. On appeal, the Ninth Circuit found that the foreclosure sale was not a transfer, and therefore did not address the issue of reasonably equivalent value. *In re Madrid,* 725 F.2d 1197, 1199 (9th Cir.1984). The 1984 Bankruptcy Amendments determined that a foreclosure sale was, after all, a transfer. However, the BAP rule regarding reasonably equivalent value is still applicable. *In re Ehring,* 91 B.R. 897, 901 (9th Cir.BAP 1988), *aff'd,* 900 F.2d 184 (9th Cir.1990). *Contra In re Lindsay,* 98 B.R. 983

(Bankr.S.D.Cal.1989) (the bid price at a foreclosure sale does not establish reasonably equivalent value).

6. BFP also argues that it did not receive proper notice of the motion to lift stay. Imperial argues convincingly that the dismissal of the involuntary bankruptcy petition made notice under the motion to lift stay irrelevant.

BFP has failed to show that the bankruptcy court erred in concluding that reasonably equivalent value was given for the subject property. Therefore, the bankruptcy court order granting summary judgment is AFFIRMED.

VOLINN, Bankruptcy Judge, dissenting:

Relying on the majority ruling in *In re Madrid*, 21 B.R. 424 (9th Cir.BAP 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), the majority here restates the view that a non-collusive and regularly conducted nonjudicial foreclosure sale creates in effect an irrebuttable presumption that the consideration received at such a sale is "reasonably equivalent value" for purposes of Bankruptcy Code § 548(a)(2).[1] While *stare decisis* does not require us to follow the BAP ruling in *Madrid* since that ruling was not adopted by the Circuit on appeal, it is appropriate that the reasoning of that ruling be considered, as evidenced by the majority in the matter before us.[2]

Since the issuance of this Court's 1982 opinion in *Madrid,* a substantial body of case law has developed in relation to the meaning of the term "reasonably equivalent value" under Code § 548(a)(2). There have emerged three approaches. The first is that articulated by the Bankruptcy Appellate Panel's *Madrid* majority in its 1982

decision. A number of bankruptcy courts and one circuit court have followed the BAP's approach on the § 548(a)(2) question. *In the Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); *In re Verna,* 58 B.R. 246 (Bankr.C.D.Cal.1986); *In re Upham,* 48 B.R. 695 (Bankr. W.D.N.Y.1985); and *In re Strauser,* 40 B.R. 868 (Bankr.N.D.Ohio 1984).[3]

The second line of cases follows the Fifth Circuit's decision in *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201 (5th Cir. 1980), a case decided under § 67(d) of the prior Bankruptcy Act. This superseded section held that a fraudulent transfer was one where the debtor did not receive "fair consideration," as opposed to the Code's use of the term "reasonably equivalent value." The trial court had found no fraudulent conveyance in a foreclosure sale price which was 57.7% of fair market value. The Fifth Circuit reversed and noted that it found no case in which a court had approved a transaction where property sold for less than 70% of fair market value. This reasoning has come to stand for a somewhat mechanical analysis of determining whether the price paid at a foreclosure sale is "an acceptable percentage of the fair market value of the property." *In re Bundles,* 856 F.2d 815, 820 (7th Cir.1988). The *Durrett* court's approach has been followed by courts outside the Fifth Circuit. *E.g., In re Thrifty Dutchman, Inc.,* 97

1. Bankruptcy Code § 548(a) provides in pertinent part: The trustee may avoid any transfer of an interest of the debtor in property ... that was made or incurred within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

 ....

 2(A) received less than a reasonably equivalent value in exchange for such transfer or obligation;

2. When the BAP's decision in *Madrid* was appealed, the Ninth Circuit declined to adopt the reasoning of the majority and instead affirmed on the grounds that no "transfer" occurred at the time of the foreclosure sale. 725 F.2d at 1200–01. The Ninth Circuit's ruling thereby became the law of the case in *Madrid.* Thereafter, the 1984 Bankruptcy Amendments revised the Bankruptcy Code's definition of "transfer," now found at 11 U.S.C. § 101(54), to make it clear that a foreclosure sale is a transfer. *See In re Ehring,* 900 F.2d 184, 187 (9th Cir.1990) (where the Ninth Circuit implicitly acknowledged that

Congress in the 1984 Amendments reversed the *Madrid* holding). It is questionable that the displacement by Congress of the Ninth Circuit *Madrid* ruling served to revive the BAP *Madrid* decision. Thus, given this history, the present viability of original *Madrid* is doubtful. *See In re Verna,* 58 B.R. 246 (Bankr.C.D.Cal.1986) ("[i]n overruling the Ninth Circuit's *Madrid* decision, Congress did not reinstate the Ninth Circuit Bankruptcy Appellate Panel's *Madrid* decision ...").

3. One of the proposed components of the 1984 Bankruptcy Amendments would have adopted the BAP's *Madrid* rule and established an irrebuttable presumption of reasonably equivalent value in the event of a regularly conducted non-collusive foreclosure sale. The Congress declined to adopt the proposal without explanation and, consequently, the legislative history in this regard is inconclusive.

B.R. 101 (Bankr.S.D.Fla.1988); *In re Cole*, 81 B.R. 326 (Bankr.E.D.Pa.1988); *Matter of IPI Liberty Village Assoc.*, 92 B.R. 882 (Bankr.W.D.Mo.1987).

The third line of cases may now be described as the majority position. The leading case is *In re Bundles*, 856 F.2d 815 (7th Cir.1988). That case reflects, in my view, what should be the law the in this area. The Seventh Circuit held:

> In our view, in defining reasonably equivalent value, the court should neither grant a conclusive presumption in favor of a purchaser at a regularly conducted, non-collusive foreclosure sale, nor limit its inquiry to a simple comparison of the sale price to the fair market value. Reasonable equivalence should depend on all the facts of each case.

*Id.* at 824. Thereafter, the court stated that "[i]t would be appropriate to permit a *rebuttable* presumption that the price obtained at the foreclosure sale represents reasonably equivalent value" (emphasis in original); that the foreclosure transaction must be examined "in its totality," and specified some of the factors to be considered: "whether there was a fair appraisal of the property, whether the property was advertised widely, and whether competitive bidding was encouraged." *Id.* This analysis has been adopted, in one form or another, by the courts of appeals for three other circuits that have considered the question. *In re Morris Communications NC, Inc.*, 914 F.2d 458 (4th Cir.1990); *In re Littleton*, 888 F.2d 90 (11th Cir.1989); and *In re Hulm*, 738 F.2d 323 (8th Cir. 1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). Many district and bankruptcy courts follow this case-by-case approach as well. *E.g., In re Brown*, 119 B.R. 413 (S.D.N.Y.1990); *In re Barrett*, 118 B.R. 255 (E.D.Pa.1990); *In re Pittsburgh Cut Flower Co., Inc.*, 124 B.R. 451 (Bankr.W.D.Pa.1991); *In re Garrison*, 48 B.R. 837 (D.Colo.1985); *In re DeVito*, 111 B.R. 529 (Bankr.W.D.Pa.1990); *In re National Environmental Systems Corp.*, 111 B.R. 4 (Bankr.D.N.H.1989); *In re Lindsay*, 98 B.R. 983 (Bankr.S.D.Cal.1989); *In re General Indus., Inc.*. 79 B.R. 124 (Bankr.D.Mass.1987); *In re Pruitt*, 72 B.R. 436 (Bankr.E.D.N.Y.1987). There are variants to re-examination of consideration, as in the case of *Barrett v. Commonwealth Federal S & L Assoc.*, 939 F.2d 20 (3d Cir.1991), holding that the sale price was subject to a reasonably equivalent value test but that the reasonable value was to be measured by other sheriff's sales and not private sales.

In the present case, the trial court utilized *Madrid*'s irrebuttable presumption analysis and therefore did not develop the record in the manner envisioned by the Seventh Circuit in *Bundles* and by the other courts cited above. In these circumstances, I would reverse the bankruptcy court's finding that no fraudulent conveyance occurred, and remand the case for further factual development of the totality of the circumstances relating to the foreclosure sale.

I therefore respectfully dissent.