**Hattie BROWN,**
**Debtor–Plaintiff–Appellant,**

v.

**VANGUARD HOLDING CORP.,**
**Thomas Polombo, and Faviola**
**Felix, Defendants–Appellees.**

**No. 89 Civ. 7127(SWK).**

United States District Court,
S.D. New York.

Sept. 17, 1990.

### MEMORANDUM OPINION
### AND ORDER

KRAM, District Judge.

This is an appeal of the Bankruptcy Court's decision denying appellant Hattie

Brown's ("Brown") motion to set aside a judicial foreclosure sale as a fraudulent conveyance under 11 U.S.C. § 548, 104 B.R. 609 (1989).

## BACKGROUND

On August 27, 1979, the appellant and her husband purchased property at 830 223rd Street Bronx, New York (the "property"). Appellant executed a first mortgage on the property to Vanguard Holding Corporation ("Vanguard") on the same day. On or about February 1, 1983, appellant defaulted on the mortgage and Vanguard chose to accelerate its mortgage and proceed to judgment in state court. On or about January 28, 1985, a judgment of Foreclosure and Sale was entered, awarding Vanguard $50,591.62 plus interest and costs. Vanguard was twice precluded from proceeding with the scheduled foreclosure sale because the appellant filed for bankruptcy under Chapter 13. Eventually, both bankruptcy petitions were dismissed.

Vanguard continued with the foreclosure action and, on or about February 28, 1988, appellant received a Notice of Sale. A judicial foreclosure sale was duly conducted pursuant to New York State law on March 22, 1988. The property was sold to one of nine bidders, at arm's length, for approximately $74,000.00.

Appellant filed a third Chapter 13 petition on March 22, 1988. On or about April 29, 1988, appellant brought, by order to show cause, a motion requesting the state court to (1) vacate and set aside a default judgment and allow the appellant to answer the complaint in the foreclosure action, and (2) rescind the sale of the property. This motion was denied because the appellant failed to show either a reasonable excuse for her default or a valid defense to the foreclosure action.

The appellant next commenced an action in United States Bankruptcy Court claiming that the judicial foreclosure sale, although duly conducted pursuant to state law, should be set aside as a fraudulent conveyance under the Bankruptcy Code § 548 ("§ 548"). Appellant submitted an appraisal which stated that the fair market value of the property on July 29, 1988, was $155,000. Appellant did not submit any proof as to the expected value at a foreclosure or distressed sale. On July 19, 1989, the Honorable Cornelius Blackshear issued a written decision holding that the sales price constituted "reasonably equivalent" value under § 548. On appeal, the debtor argues that the Court should apply a different standard to determine reasonable equivalent value under § 548. Pending the appellant's appeal to this Court, Judge Blackshear stayed the sale of the property.

## DISCUSSION

This Court has not found, and the parties have failed to cite, cases from the Second Circuit interpreting the "reasonably equivalent value" requirement. Courts have taken several different approaches in determining whether a foreclosure sale should be set aside as a fraudulent transfer under § 548.

A recent approach, which was adopted by Judge Blackshear, was expressed in *Lindsay v. Beneficial Reinsurance Co.*, 98 B.R. 983 (Bankr.S.D.Cal.1989). Under this approach, there is an irrebuttable presumption of reasonably equivalent value as long as the sale was procedurally proper, non-collusive and conducted in a commercially reasonable manner. If the court finds that the foreclosing creditor failed to take commercially reasonable steps to achieve the best distressed sale price, the court will then consider evidence of the effect of this failure on the achieved price.

The appellant advocates the approach taken in *Durrett v. Washington Nat'l Insurance Co.*, 621 F.2d 201 (5th Cir.1980). The *Durrett* court held that reasonably equivalent value had not been received for property that was sold for 57.7% of its fair market value at a non-judicial foreclosure sale. The court reached this conclusion after determining that no court has approved a transfer in which less than 70% of a property's fair market value on the sale date was received. *Durrett, supra,* 621 F.2d at 203.

■ This Court does not accept the *Durrett* holding that inadequacy of price alone is grounds to set aside a foreclosure sale. Prior to *Durrett*, noncollusive foreclosure sales, properly conducted under state law, were never seen as violating § 548 even if they resulted in a sales price below the property's appraised value. *See, e.g., Guardian Loan Co. v. Early,* 47 N.Y.2d 515, 521, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (1979) (price inadequacy alone is insufficient to vacate a foreclosure sale); *Harris v. Wagshal,* 343 A.2d 283 (D.C. 1975) (noncollusive foreclosure of security under a pledge agreement not a fraudulent conveyance); *Pierce v. Pierce,* 16 Cal.App. 375, 117 P. 580 (1911) (regularly conducted, noncollusive mortgage foreclosure sale not a fraudulent conveyance); *Reeves v. Miller,* 121 Mich. 331, 80 N.W. 19 (1899) (noncollusive sale resulting in less than fair-market value not a fraudulent conveyance).

It has also been cogently stated that the *Durrett* approach would discourage potential bidders in foreclosure sales because of the possibility that the purchase would later be set aside as fraudulent by the court. *See In re Alsop,* 14 B.R. 982, 987 (Bankr.D. Alaska 1981), *aff'd,* 22 B.R. 1017 (D.Alaska 1982). The resulting loss in value of property sold in foreclosure would hinder debtors from meeting their obligations and deter lenders from accepting property as security.[1] In light of the many public policy problems created by the *Durrett* approach, this Court declines to adopt this singular interpretation of § 548.[2]

■ This Court shall follow the *Lindsay* approach, as Judge Blackshear did, to determine equivalent value. As the *Lindsay* court stated, "the Court will examine the price obtained at a foreclosure sale only when we are persuaded that the foreclosing creditor failed to take commercially reasonable efforts to achieve the best price." *Lindsay, supra,* at 991.

■ In this case both parties agree that the foreclosure sale was conducted pursuant to state law, the property was sold to an arm's length purchaser, and there were nine bidders at the sale. Since the sale was procedurally proper and noncollusive, the next inquiry, under the *Lindsay* approach, is whether all commercially reasonable steps were taken to achieve the highest foreclosure price. This involves examining the nature and extent of the sales effort, *General Indus. v. Shea,* 79 B.R. 124 (Bankr.D.Mass 1987), whether there was a fair appraisal of the property, and whether competitive bidding was encouraged. *In re Bundles,* 856 F.2d 815 (7th Cir.1988).

The evidence demonstrates a reasonable sales effort, resulting in competitive bidding. The appellant admits that she received a proper Notice of Sale on or about February 28, 1988, apprising her of the March 22, 1988 foreclosure date. The fact that there were nine bidders at the auction demonstrates that the sale was properly advertised and that there was competitive bidding.

In determining whether there was a fair appraisal of the property the burden of proof is on the appellant to show that the consideration received was inadequate. Appellant has submitted an appraisal of the property as of July 29, 1988. The sale, however, took place on March 22, 1988. In addition, appellant has not presented any evidence of what a reasonable price for the property in a distress sale would have

---

**1.** *See generally,* Note, *The Big Chill: Applicability of Section 548(a)(2) of the Bankruptcy Code to Noncollusive Foreclosure Sales,* 53 Fordham L.Rev. 813 (1985).

**2.** The *Madrid* approach, urged by the defendant, reads into § 548 an irrebuttable presumption of reasonably equivalent value to any regularly conducted, noncollusive foreclosure sale. An irrebuttable presumption, however, is inconsistent with the language of the statute. Section 548(a)(2)(A) provides that a trustee may avoid a transfer if, *inter alia,* the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." This language focuses on the value received for the transfer, not simply the process. If Congress had intended a regularly conducted, noncollusive sale to benefit from an irrebuttable presumption of reasonably equivalent value the statute would be worded differently. Indeed, an amendment was proposed, codifying the *Madrid* irrebuttable presumption, but it was rejected. *See* Cong. Rec.S. 13771–S.13772 (No. 131, Pt. II, Oct. 5, 1984).

been. Such evidence is vital in determining the value of property being sold at a foreclosure sale. By not introducing any evidence as to what similar homes in her neighborhood are worth at a foreclosure or distressed sale, the appellant has failed to meet her burden of proof.

Because the foreclosure sale was noncollusive and properly conducted in accordance with state law and the appellee made commercially reasonable efforts to achieve the best price, this Court will not set aside the sale on appeal. Although a low percentage of fair market value was received, the foreclosure price is deemed to provide a reasonable equivalent value within the meaning of § 548(a)(2)(A).

## CONCLUSION

For the aforementioned reasons the appellant's appeal is denied.

SO ORDERED.