In re Donald R. BENNETT, Debtor.

Donald R. BENNETT and Robert E. Littlefield, Jr., as Chapter 12 Trustee, Plaintiffs,

v.

GENOA AG CENTER, INC., Richard Sharp, Sandra Sharp, Douglas Van Benschoten, Marjorie Van Benschoten and Farm Credit of Western New York, ACA, Defendants.

Bankruptcy No. 91–03017. Adv. No. 92–60049A.

United States Bankruptcy Court, N.D. New York.

Nov. 6, 1992.

Decision on Motions to Amend, March 17, 1993.

Hinman, Howard & Kattell, Binghamton, NY (M. Elizabeth Bradley, Albert J. Millus, Amy Shapiro, of counsel), for plaintiff.

Williamson, Clune & Stevens, Ithaca, NY (Robert J. Clune, of counsel), for defendants, Genoa Ag Center, Inc., Richard Sharp, Sandra Sharp, Douglas Van Benschoten and Marjorie Van Benschoten.

Karpinski, Stapleton & Fandrich, P.C., Auburn, NY (Mark H. Fandrich, of counsel), for Farm Credit of Western New York, ACA.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER AND RECOMMENDATION PURSUANT TO 28 U.S.C. § 157(c)(1)

STEPHEN D. GERLING, Bankruptcy Judge.

Presently before the Court in this adversary proceeding are the Fifth, Eighth, Tenth, and Eleventh causes of action set forth in the Second Amended Complaint filed by Debtor Donald R. Bennett ("Bennett") and the Chapter 12 Trustee on July 13, 1992.[1] Bennett's Second Amended Complaint asserted eleven respective causes of action against Genoa Ag Center, Inc. and its principals ("Genoa Ag"), and Farm Credit of Western New York, ACA ("Farm Credit").

---

**1.** Plaintiffs commenced this adversary proceeding on March 6, 1992. Prior to trial the Chapter 12 Trustee withdrew as a party plaintiff.

In its Answer filed with the Court on April 8, 1992, Genoa Ag demanded a jury trial on the eight causes of action by which it was affected. By Order dated August 17, 1992, the Court determined that Genoa Ag was entitled to a jury trial on the First, Second, and Third causes of action, all of which were determined to be core matters. However, the Court determined that neither Farm Credit nor Genoa Ag had a right to a jury trial on either the Fifth or the Tenth cause of action, which were also determined to be core matters.

By the same Order, the Court determined that the Fourth, Ninth, and Eleventh causes of action, asserted solely against Genoa Ag, were triable by a jury, but that these causes of action were non-core matters upon which the Court, pursuant to 28 U.S.C. § 157(c)(1), could not enter a final order absent the consent of all parties. All parties consented to the entry of a final order by the Court on the Fourth and Ninth causes of action. Genoa Ag, however, did not consent to the entry of a final order on the Eleventh cause of action, but did waive its right to a jury trial thereon.[2]

Finally, by virtue of the August 17th Order, the Sixth, Seventh, and Eighth causes of action, asserted solely against Farm Credit, were found to be core, however, Farm Credit did not demand a jury trial thereon. The Sixth and Seventh causes of action were later withdrawn by Bennett prior to trial, leaving the Eighth cause of action as the only one asserted solely against Farm Credit.

Due to the interrelated factual nature of all eleven causes of action, the Court *sua sponte* ordered that the Fifth, Eighth, Tenth, and Eleventh causes of action be tried by an advisory jury, pursuant to Federal Rule of Civil Procedure 39(c). Thereafter, trial of this adversary proceeding commenced on September 16, 1992 and was concluded on October 1, 1992. The jury returned final verdicts on the First, Fourth, and Ninth causes of action, and advisory verdicts on the Fifth, Eighth, Tenth, and Eleventh causes of action.[3] Pursuant to Federal Rule of Civil Procedure 52(a), made applicable herein by Federal Rule of Bankruptcy Procedure 7052, the Court directs entry of final judgments on the Fifth, Eighth, and Tenth causes of action, and a proposed findings of fact, conclusions of law and recommendation on the Eleventh cause of action.

## JURISDICTION

The Court has jurisdiction over the Fifth cause of action pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(H). The Court has jurisdiction over the Eighth and Tenth causes of action pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(A, O). The Court has jurisdiction over the Eleventh cause of action pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(c)(1).

## FACTS

Bennett has been engaged in farming in Cayuga County, New York for approximately thirty years. During this period he has steadily expanded his operations by acquiring various parcels of farmland and modernizing his equipment and machinery. To facilitate this expansion, Bennett obtained more than $140,000 in loans from Farm Credit. In the mid–1980's Bennett consolidated his Farm Credit loans, and Farm Credit took a mortgage on two parcels of Bennett's farmland. By 1990, Bennett began to experience difficulty in making payments on his mortgage obligation to Farm Credit. He failed to make an interest payment due March 1, 1990, and subsequently failed to make other payments of interest and principal. On October 12, 1990, Farm Credit commenced a foreclosure action on the mortgage, which at that time secured an outstanding balance of approximately $161,312.

During the 1980's, Bennett purchased his farm supplies from Genoa Ag, usually on

---

**2.** *See* Order of the Court dated September 3, 1992, 154 B.R. 126.

**3.** During the course of the trial the Second cause of action was withdrawn by Bennett.

Following the close of Bennett's proof, the Court dismissed the third cause of action pursuant to Federal Rule of Civil Procedure 50(a).

credit terms. By 1990, Bennett was having trouble making payments not only to Farm Credit, but also on his credit account with Genoa Ag, which had an outstanding balance of more than $50,000. Thus, on July 11, 1990, Genoa Ag obtained a default judgment ("judgment") against Bennett in the amount of $51,307.39. Bennett made a partial payment on the judgment in September, 1990. On October 1, 1990, however, Genoa Ag placed a restraint on Bennett's checking account. Thus, on October 5, 1990, Bennett entered into an agreement with Genoa Ag, whereby Genoa Ag agreed to release the restraint on Bennett's checking account in exchange for *inter alia*, a promissory note, mortgage and security agreement giving Genoa Ag a lien against Bennett's real and personal property.

As previously indicated, Farm Credit commenced a foreclosure action on October 12, 1990. In an effort to avert foreclosure, Bennett entered into two separate contracts to sell two respective tracts of farmland. Neither sale could proceed, however, unless both Farm Credit and Genoa Ag released their respective liens on the properties. Both Farm Credit and Genoa Ag released their liens on one tract of land, and Bennett sold that tract for $31,805, which amount he thereafter paid to Farm Credit.

Bennett had also arranged for the sale of the second tract of land to Peter and Julia Phillips for $85,000. Farm Credit agreed to release its lien on this piece of land on the condition that it receive all of the sale proceeds. Initially, Genoa Ag also agreed to release its lien on this property. However, when Bennett refused to pay it for approximately $3,700 of fertilizer which he had previously purchased, Genoa Ag reneged on its agreement to release its lien. Bennett thereafter asked Farm Credit to accept $3,700 less than the entire amount of proceeds from the sale, which he would pay Genoa Ag for the release of its lien. Farm Credit refused to accept less than the full amount of the sale proceeds. As a result, Bennett was unable to pay $3,700 to

Genoa Ag and Genoa Ag refused to release its lien, thus thwarting the sale to the Phillipses, and allowing the foreclosure sale to proceed.[4]

The foreclosure sale took place on September 18, 1991, and Genoa Ag successfully bid in the property in question for $138,500 plus approximately $7,000 in unpaid taxes. To finance this purchase, Genoa Ag drew approximately $140,000 upon an existing line of credit with Farm Credit, and Farm Credit took back a mortgage on the property. On October 12, 1991, Bennett filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). As previously indicated, Bennett commenced the instant adversary proceeding on March 6, 1992. The Fifth, Eighth, Tenth and Eleventh causes of action asserted in Bennett's Second Amended Complaint are presently before the Court.

*Fifth Cause of Action*

## ARGUMENTS

Under the Fifth cause of action, Bennett seeks to set aside the foreclosure sale of his property as a fraudulent transfer, pursuant to Code § 548(a)(2). Bennett thus argues that the price of $138,500 (plus unpaid taxes) obtained by Farm Credit at the sale is not "reasonably equivalent value" for the property because 1) the price is insufficiently low in relation to the property's appraised fair market value; 2) the foreclosure sale was collusive; and 3) the sale was not conducted in a commercially reasonable manner. Additionally, Bennett contends that he was rendered insolvent and/or left with unreasonably small capital as a result of the sale.

In response to special interrogatories, the jury found that the sale was collusive and not conducted in a commercially reasonable manner, and that as a result of one or both of these factors, the sale price was unreasonably low. The jury also found that Bennett was either insolvent at the time of the sale or rendered insolvent as a

---

**4.** Under Bennett's Fourth cause of action, the jury determined that by refusing to release its lien against the second tract of land, Genoa Ag tortiously interfered with Bennett's contract to sell that tract, and awarded Bennett damages of $2,500.

result of the sale, and thus did not reach the issue of whether Bennett was left with unreasonably small capital as a result of the sale. Not surprisingly, Bennett urges the Court to accept the jury's advisory findings as its own on these questions.

Both Genoa Ag and Farm Credit assert that the jury's advisory findings on this cause of action are unsupported by the evidence. Thus, they each contend that the sale price constitutes reasonably equivalent value for the property because the sale was non-collusive and procedurally proper under state law.

## DISCUSSION

Initially, the Court notes that it " 'is not bound by the advisory jury's findings and is free to adopt them in whole or in part or totally disregard them.' " *Cities Service Co. v. Ocean Drilling and Exploration Co.*, 813 F.2d 679, 686 (5th Cir.1987) (quoting *Cities Service Co. v. Ocean Drilling and Exploration Co.*, 758 F.2d 1063, 1071 (5th Cir.1985) (citations omitted)). In determining whether the foreclosure sale of Bennett's property should be set aside as a fraudulent transfer, the Court must first determine whether the sale price constitutes "reasonably equivalent value" for the property within the meaning of Code § 548(a)(2)(A). There are three lines of cases addressing the issue of how to determine whether a transfer of property by foreclosure sale is for reasonably equivalent value. One line of cases has evolved out of the decision in *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th Cir. 1980), and stands for the proposition that a foreclosure sale price which is less than 70% of the property's fair market value is not reasonably equivalent value. *See, e.g., In re Thrifty Dutchman, Inc.*, 97 B.R. 101 (Bankr.S.D.Fla.1988); *Matter of IPI Liberty Village Assoc.*, 92 B.R. 882 (Bankr. W.D.Mo.1987); *In re Cole*, 81 B.R. 326 (Bankr.E.D.Pa.1988); *In re Wheeler*, 34 B.R. 818 (Bankr.N.D.Ala.1983); *In re Thompson*, 18 B.R. 67 (Bankr.M.D.Tenn. 1982).

At the other end of the spectrum is a second line of cases which has evolved from the decision in *In re Madrid*, 21 B.R. 424 (9th Cir. BAP 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). These cases hold that the price obtained at a foreclosure sale which is non-collusive and procedurally proper under state law is, *ipso facto*, reasonably equivalent value for the property sold. *See, e.g., In re BFP*, 132 B.R. 748 (9th Cir. BAP 1991), *aff'd*, 974 F.2d 1144 (9th Cir.1992); *Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985); *In re Upham*, 48 B.R. 695 (Bankr. W.D.N.Y.1985); *In re Strauser*, 40 B.R. 868 (Bankr.N.D.Ohio 1984).

A third line of cases rejects both the *Durrett* rationale and the *Madrid* rationale in favor of what can be characterized as a "middle" position of determining reasonable equivalence on a case by case approach. In the leading case of *In re Bundles*, 856 F.2d 815, 824 (7th Cir.1988), the Seventh Circuit articulated the position thusly:

> In our view, in defining reasonably equivalent value, the court should neither grant a conclusive presumption in favor of a purchaser at a regularly conducted, non-collusive foreclosure sale, nor limit its inquiry to a simple comparison of the sale price to the fair market value. Reasonable equivalence should depend on all the facts of each case.

The *Bundles* position has been adopted in one form or another in a majority of jurisdictions in which the issue has arisen. *See, e.g., Matter of Grissom*, 955 F.2d 1440 (11th Cir.1992); *In re Littleton*, 888 F.2d 90 (11th Cir.1989); *Barrett v. Commonwealth Fed. Savings and Loan Ass'n*, 939 F.2d 20 (3d Cir.1991); *In re Morris Communications NC, Inc.*, 914 F.2d 458 (4th Cir.1990); *In re Hulm*, 738 F.2d 323 (8th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984); *Brown v. Vanguard Holding Corp.*, 119 B.R. 413 (S.D.N.Y.); *In re Henry–Luqueer Properties, Inc.*, 145 B.R. 771 (Bankr.E.D.N.Y. 1992); *In re National Environmental Systems Corp.*, 111 B.R. 4 (Bankr.D.N.H.

1989); *In re General Industries, Inc.*, 79 B.R. 124 (Bankr.D.Mass.1987).

This Court rejects *Durrett* and its progeny and, therefore, must decide whether to adopt the *Bundles* formulation or the *Madrid* formulation of determining reasonable equivalence. In *Bundles*, the Seventh Circuit stated that because Code § 548(a)(2)(A) "makes no distinction between sales that do and sales that do not comply with state law," the definition of reasonable equivalence must be a federal standard, and must exist independent of state law. Thus, the Seventh Circuit held that the sale price at a foreclosure sale which was non-collusive and properly conducted according to state law could not be irrebuttably presumed to constitute reasonably equivalent value. Rather, the court in *Bundles* held that a federal standard of reasonable equivalence requires a court to consider various factors such as sale price in relation to appraised value, the extent to which the sale was advertised, and whether the sale fostered competitive bidding. *Id.* at 824.

■ This Court agrees with the assertion in *Bundles* that Code § 548(a)(2)(A) creates a federal standard of reasonable equivalence. However, for the reasons set forth herein, the Court finds that the federal standard of reasonable equivalence, at least as applied to regularly conducted, non-collusive foreclosure sales, should be consonant with applicable state foreclosure law. The *Bundles* court expressly declined to make such a finding, stating "we must reject the view that state law, either directly *or as the federal rule of decision*, should determine the outcome of a bankrupt's complaint under section 548(a)(2)(A)." *Id.* at 822 (emphasis added).

However, those Courts which, like the Seventh Circuit, reject state law as the basis for a federal rule of decision in this area, adopt a broad interpretation of the phrase "reasonably equivalent value" which effectively emasculates state foreclosure sale laws by imposing upon them a standard of commercial reasonableness. *See, e.g., In re Henry–Luqueer Properties, Inc.*, 145 B.R. at 775; *Brown v. Vanguard Holding Corp.*, 119 B.R. at 413; *Lindsay*

*v. Beneficial Reinsurance Co.*, 98 B.R. 983 (Bankr.S.D.Cal.1989). Such a reading thus allows for the encroachment of Code § 548(a)(2)(A) into the substantive law of foreclosure, an area which has traditionally been left to state control, *see Zajac v. Federal Land Bank of St. Paul*, 909 F.2d 1181, 1182 (8th Cir.1990) (citation omitted), and ignores the long established dictate that federal statutes are to be narrowly construed to avoid potential conflicts with substantive state law. *See Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 202, 76 S.Ct. 273, 275, 100 L.Ed. 199 (1956) (citation omitted). *See also Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 112 (4th Cir.1989) (citing *Weitz Co. v. Mo–Kan Carpet, Inc.*, 723 F.2d 1382, 1388 (8th Cir. 1983) (Swygert, J., dissenting) (citing, *inter alia, Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938))); *Federal Sav. and Loan Ins. Corp. v. Shelton*, 789 F.Supp. 1360, 1364 (M.D.La.1992).

This concern over the relationship between federal and state law served as a basis for the decision in *In re BFP*, *supra*, where the Ninth Circuit upheld the *Madrid* standard by narrowly reading Code § 548(a)(2)(A) to require that the price obtained at a regularly conducted, non-collusive foreclosure sale constitute reasonably equivalent value. The Ninth Circuit stated:

Unlike the *Bundles* court, we see the issue as both one of statutory interpretation and the growing tension between pre-emption and the requirements of a vigorous federal system. The Supreme Court has recently reminded us that our interpretation of federal statutes should be tempered with due regard for traditional state areas of regulation. *See Cipollone v. Liggett Group, Inc.* [—— U.S. ——, —— – ——], 112 S.Ct. 2608, 2617–18 [120 L.Ed.2d 407] (1992). Thus, by interpreting § 548 in accordance with the *Madrid* formulation, we are able to balance bankruptcy policy and comity concerns. (Footnote omitted).

974 F.2d at 1149.

■ Based upon the foregoing, this Court agrees with the Ninth Circuit's decision in *In re BFP*, and holds that the price

received at a foreclosure sale which is neither collusive nor procedurally improper under state law constitutes reasonably equivalent value within the meaning of Code § 548(a)(2)(A).

The Court must next determine whether the foreclosure sale of Bennett's property was in fact "regularly conducted" and "non-collusive." All of the parties have stipulated to the fact that the foreclosure sale was properly conducted under applicable New York State law (*See* Farm Credit's Exhibit EE). Bennett, however, contends that the sale was fraught with collusion. He generally asserts that Genoa Ag and Farm Credit colluded to 1) force his property into foreclosure, and 2) allow Genoa Ag to then purchase the property by obtaining the requisite financing from Farm Credit.

█ The Court has been unable to locate any cases which expound upon the nature of the collusion which will potentially result in the setting aside of a foreclosure sale. Indeed, Genoa Ag and Farm Credit may have colluded to force Bennett's property into foreclosure, and it appears that the jury reached such a conclusion in rendering its verdict on this cause of action. However, given that the focus of an avoidable transfer under Code § 548(a)(2)(A) is on reasonably equivalent *value* received, the Court concludes that the appropriate focus of an inquiry into collusion must be on the sale itself, as opposed to events leading up to the commencement of the foreclosure. That is, for purposes of Code § 548(a)(2), the effect of the collusion must be evident in the price received for the property and, accordingly, must manifest itself in bid rigging or some other form of price fixing.[5]

█ In the present case, there is no evidence of any bid rigging or that competitive bidding was actively discouraged by any party. The collusion alleged by Bennett, and the evidence purporting to support it, does not relate to any form of price fixing at the foreclosure sale and thus has no bearing upon the value received for the property at the foreclosure sale. Therefore, while such collusion might be a basis for some other cause of action, it does not form a basis in this instance for a cause of action under Code § 548(a)(2).

The Court therefore finds that the foreclosure sale of Bennett's property was regularly conducted pursuant to New York law and was non-collusive. Hence, in accordance with the Ninth Circuit's ruling in *In re BFP, supra,* the Court holds that reasonably equivalent value was received for Bennett's property. It is therefore unnecessary to consider the questions of whether Bennett was insolvent or left with unreasonably small capital as a result of the sale. Based upon the foregoing, the Court declines to adopt the jury's advisory verdict on this cause of action, and Bennett's Fifth cause of action seeking to avoid the foreclosure sale pursuant to Code § 548(a)(2)(A) is dismissed.[6]

*Eighth Cause of Action*

### ARGUMENTS

Under the Eighth cause of action, Bennett argues that Farm Credit, by refusing to accept $3,700 less in proceeds from the proposed sale to the Phillipses, breached a duty of good faith and fair dealing implicit in the mortgage agreement between the parties. Specifically, Bennett contends that by refusing to accept $3,700 less in proceeds, Farm Credit improperly impaired

---

5. This construction of the collusion requirement is consistent with Code § 363(n), which allows for the avoidance of collusive sales of estate property, and which provides in pertinent part:
 (n) The trustee may avoid a sale under this section if the *sale price* was controlled by an agreement among potential *bidders* at such sale ... (emphasis added).
 *See, e.g., Ramsay v. Vogel,* 970 F.2d 471 (8th Cir.1992).

6. The result reached herein would not be different if the Court were to follow the *Bundles*

standard of determining reasonably equivalent value on the basis of all of the facts surrounding the sale. This is because Bennett, by not introducing any evidence of what similar properties in the area would bring at a foreclosure sale, failed to show how any of the facts surrounding the sale impacted upon the sale price. *See Barrett v. Commonwealth Federal Sav. and Loan Ass'n,* 939 F.2d 20, 24 (3rd Cir.1991); *In re Henry–Luqueer Properties, Inc.,* 145 B.R. at 775–76; *Brown v. Vanguard Holding Corp.,* 119 B.R. at 415–416.

Bennett's ability to pay his mortgage debt. The jury found that Farm Credit violated its duty of good faith and fair dealing by refusing to accept $3,700 less in sale proceeds, and awarded Bennett compensatory damages of $85,000, and consequential damages of $130,000. Bennett urges the Court to adopt the jury's findings.

Farm Credit asserts that it was under no obligation to accept anything less than what it was owed, and that, in agreeing to suspend the foreclosure sale to allow for the completion of the Phillips sale, it did not agree to make accommodations for the payment of junior liens on the property. Additionally, Farm Credit argues that its actions did not proximately cause Bennett to suffer damages. In this regard, Farm Credit contends that even if it had accepted $3,700 less in proceeds, the sale to the Phillipses would not have been consummated because Bennett's ex-wife also had a lien on the property, and there is no evidence that she would have released that lien.

### DISCUSSION

"Under New York law, every contract contains an implied covenant of good faith and fair dealing" which includes " 'an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.' " *Carvel Corp. v. Diversified Management Group*, 930 F.2d 228 (2d Cir.1991) (quoting *Grad v. Roberts*, 14 N.Y.2d 70, 75, 248 N.Y.S.2d 633, 637, 198 N.E.2d 26, 28 (1964)) (other citations omitted). In the instant case, the contract in question is the mortgage loan agreement between Bennett and Farm Credit, and this cause of action takes the tone of a lender liability suit.

As indicated by the testimony of Lyndon O'Dell, an officer of Farm Credit, from 1985 onward, Farm Credit routinely accepted late payments, extended payment deadlines, and generally administered the Bennett loan in a lenient fashion. As stated by one court,

> Despite the mechanical provisions of an agreement, the actual historical relationship between a borrower and lender may alter a lender's obligations when it attempts to enforce those provisions at a later time. "[W]hen the lender initially displays leniency toward the borrower in its administration of the loan agreement, it may later violate the good faith obligation if it suddenly changes its previously lenient course of dealing."

*B.P.G. Autoland Jeep–Eagle v. Chrysler Credit*, 785 F.Supp. 222, 228 (D.Mass.1991) (quoting K.J. Goldberg, *Lender Liability and Good Faith*, 68 B.U.L.Rev. 653, 659 (1988)).

The duty of fair dealing, if not good faith, encompasses a standard of reasonableness. *See, e.g., T.W. Oil, Inc. v. Consolidated Edison Co. of New York, Inc.*, 57 N.Y.2d 574, 586, 457 N.Y.S.2d 458, 465, 443 N.E.2d 932, 937; *Don King Productions, Inc. v. Douglas*, 742 F.Supp. 741 (S.D.N.Y. 1990). In the instant case, sufficient evidence was presented at trial for the jury and this Court to have concluded that Farm Credit's refusal to accept $3,700 less in proceeds from the proposed sale was unreasonable, and thus violative of the duty of good faith and fair dealing.

O'Dell testified that he refused to accept $3,700 less in proceeds because he became "absolutely fed up ... and tired with the whole situation" when the proposed sale to the Phillipses became doubtful. He thus abandoned the lenient stance in which he had previously administered the loan and refused to accept $3,700 less in proceeds from the sale. This despite the fact that the weight of the evidence indicates that Farm Credit would have been better served by accepting $3,700 less in proceeds. For example, O'Dell testified that the fair market value of the parcel of land to be sold to the Phillipses was $69,000, and that that parcel would likely bring less than that at a foreclosure sale. Yet, Bennett had a contract to sell that property for $85,000, substantially more than its appraised fair market value. All of this at least suggests that Farm Credit's refusal to assist Bennett with the sale to the Phillipses was motivated by something other than a *reasonable* desire to salvage maximum pay-

ment on Bennett's loan obligation, and is therefore sufficient to support the jury's finding that Farm Credit breached its duty of good faith and fair dealing.

The record also supports the jury's finding that Farm Credit's conduct proximately caused the Phillips sale to not be completed. There is no definitive indication that Bennett's ex-wife would not have released her lien had Genoa Ag also done so. She testified that, as an employee of Genoa Ag, she did not want to release her lien because she feared antagonizing Genoa Ag and losing her job if she did so. However, she also testified to the effect that, had Genoa Ag released its lien, she then may have released her lien also. Thus, the Court concludes that there is sufficient evidence in the record to support the jury's findings on the Eighth cause of action. Accordingly, judgment for Bennett on this cause of action will be entered in accordance with the advisory jury verdict.

*Tenth Cause of Action*

Under the Tenth cause of action, Bennett seeks the return of monthly adequate protection payments of $600 which, pursuant to this Court's Order, he has made to Genoa Ag for the continued use of the land during the pendency of his bankruptcy case. Bennett concedes that "[i]f the Court rules against Mr. Bennett on the fifth cause of action, thus upholding the foreclosure sale, it naturally follows that Genoa Ag is entitled to keep the adequate protection payments ordered by the Court."

Curiously, though it found for Bennett under the Fifth cause of action, the jury found that he was not entitled to the return of these adequate protection payments. Because the Court herein dismisses Bennett's Fifth cause of action, the Tenth cause of action is also dismissed, in accordance with the jury's advisory verdict.

*Eleventh Cause of Action*

ARGUMENTS

Under his Eleventh cause of action, Bennett contends that Genoa Ag breached a contract with him when it refused to release its lien on the parcel of land which Bennett had arranged to sell to the Phillipses. Bennett argues that a contract was

formed when Genoa Ag originally agreed to release its lien on the property. Bennett contends that this contract was then breached when Genoa Ag, in connection with the dispute over the non-payment for $3,700 of fertilizer, subsequently refused to release its lien.

Genoa Ag argues that the purported contract in question was never formed because Genoa Ag received no consideration for its promise to release its lien. Bennett, however, contends that the consideration received by Genoa Ag was Bennett's promise to complete the Phillips sale, pay the net proceeds to Farm Credit, and thereby improve Genoa Ag's secondary secured position with respect to the property. The jury found that the contract in question was supported by adequate consideration, and was breached by Genoa Ag, and awarded Bennett compensatory damages of $100.

DISCUSSION

█ Bennett cites *Allegheny College v. National Chautauqua County Bank*, 246 N.Y. 369, 159 N.E. 173 (1927), for the proposition that mutual promises are generally held to be sufficient consideration for each other. In this instance, Bennett maintains that his promise to pay down a pre-existing senior debt to Farm Credit constitutes consideration for Genoa Ag's promise to release its lien. However, "a promise made in consideration of the doing of an act which the promisee is already under obligation to a third person to do, though made as an inducement to secure the doing of that act, is not binding because it is not supported by a valid consideration ..." 21 N.Y.Jur.2d, Contracts § 106.

█ Here, Bennett was clearly under a pre-existing legal obligation to satisfy his obligation to Farm Credit, whether or not Genoa Ag released its lien. Yet, Bennett argues that a separate benefit would have accrued to Genoa Ag because, by releasing its lien, the sale would have caused Bennett's obligation to Farm Credit to be reduced, and would have thus improved Genoa Ag's secured position on Bennett's remaining property. However, Bennett was

already under a pre-existing obligation to pay Genoa Ag, regardless of its secured position. By reducing its obligation to Farm Credit, Bennett would not have been granting additional security to Genoa Ag, but rather would have been taking action to ultimately pay Genoa Ag, which it was already obligated to do. In fact, by virtue of the land sale, the reduction in the amount of Bennett's obligation to Farm Credit would have been offset by a corresponding reduction in the value of remaining land subject to Genoa Ag's mortgage lien. A promise to perform a pre-existing legal duty is illusory and is insufficient consideration for another agreement. *See* 21 NY Jur 2d § 100. Therefore, the Court recommends that the advisory verdict on the Eleventh cause of action be disregarded, and that the Eleventh cause of action be dismissed on the basis that the purported contract between Bennett and Genoa Ag is devoid of sufficient consideration.█

Based upon the foregoing, it is

ORDERED that judgment shall be entered dismissing the Fifth and Tenth causes of action, and it is further

ORDERED that on the Eighth cause of action, judgment shall be entered awarding Bennett compensatory damages as against Farm Credit in the sum of $85,000 and consequential damages as against Farm Credit in the sum of $130,000, and it is further

RECOMMENDED, to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 157(c)(1) that the Eleventh Cause of Action be dismissed, and it is finally

ORDERED that any and all post-trial motions pursuant to Federal Rules of Civil Procedure 50(b) and 59 and Federal Bankruptcy Rule 9023 addressed to this Order or the Judgment entered herein be filed and noticed for argument before this Court at the U.S. Courthouse, 100 South Clinton Street in Syracuse, New York on December 8, 1992 at three o'clock p.m.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Presently before the Court is the motion of defendant Farm Credit of Western New York, ACA ("Farm Credit") for entry of an Order 1) amending, pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R.Bankr.P.") 7052 and Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 52(b), this Court's Findings of Fact and Conclusions of Law, and Judgment ("Judgment") entered by the Court on November 6, 1992 relating to the Eighth cause of action in this adversary proceeding; 2) vacating, altering and amending the Judgment on the Eighth cause of action, pursuant to Fed. R.Civ.P. 59(e) and Fed.R.Bankr.P. 9023; 3) relieving Farm Credit from operation of the Judgment pursuant to Fed.R.Civ.P. 60(b)(1) and (6) and Fed.R.Bankr.P. 9024, and; 4) awarding judgment in favor of Farm Credit on the Eighth cause of action.

Also before the Court is Plaintiff Donald Bennett's ("Bennett") motion for entry of an Order, pursuant to Fed.R.Civ.P. 52(b), 59(e) and 60(b), each of which is made applicable herein by Fed.R.Bankr.P. 7052, 9023 and 9024, respectively, amending this Court's Findings of Fact and Conclusions of Law and Judgment relating to the Fourth and Eighth causes of action, as well as its Recommendation on the Eleventh cause of action, to provide that Farm Credit and Genoa Ag Center, Inc. ("Genoa Ag") are jointly and severally liable for damages under each of those causes of action.

The Court heard argument on these motions on January 25, 1993. Following the receipt of memoranda of law from all parties, the motions were submitted for decision on February 16, 1993.

### JURISDICTION

The Court has core jurisdiction over the instant motions pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(A, O).

### FACTS

The relevant factual background of this adversary proceeding is set forth in the

Court's Memorandum–Decision, Findings of Fact, Conclusions of Law, Order and Recommendation dated November 6, 1992 ("Memorandum–Decision"). That background will not be fully reiterated, but shall be incorporated herein.

Following a trial which lasted approximately two weeks, the jury returned a final verdict in favor of Bennett on the Fourth cause of action, determining that Genoa Ag tortiously interfered with a contract of sale between Bennett and Peter and Julia Phillips ("the Phillipses"), and awarding Bennett $2,500 in damages. The jury also returned an advisory verdict in favor of Bennett on the Eighth cause of action, determining that Farm Credit breached a duty of good faith and fair dealing owed to Bennett by refusing to accept less than the entire amount of proceeds from Bennett's prospective sale to the Phillipses.[1] The jury found that this breach prevented the consummation of the sale to the Phillipses, and awarded Bennett $85,000 in compensatory damages and $130,000 in consequential damages. The Court adopted the jury's advisory verdict and, accordingly, entered Judgment against Farm Credit on the Eighth cause of action in the aggregate amount of $215,000.

Farm Credit now essentially asks that this Court reconsider and vacate its Judgment on the Eighth cause of action, and enter judgment in its favor by dismissing the Eighth cause of action. Bennett opposes Farm Credit's motion and requests that the Court amend and alter its Judgment on the Fourth and Eighth causes of action to hold Genoa Ag and Farm Credit jointly and severally liable for the aggregate damages which have been awarded under each of those causes of action.

## ARGUMENTS

In support of its motion, Farm Credit argues that the Judgment as it relates to the Eighth cause of action must be overturned because it is predicated upon at least seven general factual and/or legal errors, which are summarized as follows:

1. Farm Credit contends that the Court erroneously failed to grant Farm Credit's motion to dismiss the Eighth cause of action in its entirety at the close of Bennett's case, and that the Judgment should therefore be vacated. Farm Credit asserts that such motion should have been granted for Bennett's failure to establish a *prima facie* case under this cause of action, because Bennett did not show bad faith on the part of Farm Credit, or that Farm Credit's conduct proximately caused quantifiable damages to Bennett.

2. Farm Credit argues that Bennett's Eighth cause of action cannot be maintained as a matter of law because, notwithstanding any duty of good faith and fair dealing, Farm Credit was under no obligation to accommodate Bennett under its mortgage agreement once it obtained a Judgment of Foreclosure and Sale.

3. Farm Credit further argues that, even if Farm Credit owed a duty of good faith and fair dealing to Bennett after the Judgment of Foreclosure and Sale was obtained, Bennett failed to prove that Farm Credit breached such duty.

4. Farm Credit maintains that the Judgment on the Eighth cause of action must be vacated because Farm Credit's conduct was not the proximate cause of Bennett's injury. In this regard, Farm Credit asserts that Bennett failed to prove that both Genoa Ag and his wife, Joyce Bennett, would have released their respective liens on the property in the event that Farm Credit had accepted $3,700 less in proceeds.

5. Farm Credit further asserts that the Fourth and Eighth causes of action, though asserted against separate defendants, are both premised upon largely identical factual allegations which allegedly caused a single injury to Bennett. Farm Credit thus argues that the $215,000 damage award on the Eighth cause of action is inconsistent with the $2,500 damage award against Genoa Ag on the Fourth cause of action, and must therefore be vacated or reduced to $2,500.

1. Farm Credit did not demand a jury trial on the Eighth cause of action.

6. Farm Credit argues that the Judgment on the Eighth cause of action must be vacated because the Court erroneously permitted Bennett to conform his pleadings to the proof at the close of the trial. Farm Credit maintains that in conforming his pleadings to the proof, Bennett asserted a new theory of liability against Farm Credit which must fail as a matter of law, and which therefore should never have been submitted to the jury.

7. Lastly, Farm Credit argues that the Court failed to make findings of fact to support the $215,000 damage award, and that there is insufficient evidence to support a judgment on any theory against Farm Credit, either as to liability or as to damages.

Bennett responds by generally asserting that Farm Credit is improperly conducting a "dress rehearsal" for an ultimate appeal to the district court by seeking to rehash arguments which the Court has already addressed. Additionally, and not surprisingly, Bennett argues that the Court decided the Eighth cause of action correctly, and offers additional support for the Court's decision.

## DISCUSSION

Fed.R.Civ.P. 52(b) and 59(e) allow a trial court to amend its findings or make additional findings and to amend its judgment accordingly in order to correct manifest errors of fact or law. *See National Metal Finishing v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 125 (1st Cir.1990). Upon review of the Court's Memorandum–Decision, it is clear that the Court made at least one manifest error of law which is not directly asserted by Farm Credit, but which is implicit in each of its arguments. With respect to the Eighth cause of action, the Court erroneously sought to rationalize and support the jury's advisory verdict and, while it made certain independent findings of fact, it did not arrive at conclusions of law independent of the advisory jury, as is required by Fed.R.Civ.P. 52(a) and Fed.R.Bankr.P. 7052. *See Piekarski v. Home Owners Savings Bank, F.S.B.*, 759 F.Supp. 542, 545 (D.Minn.1991); *Woodland v. City of Houston*, 940 F.2d 134, 138 (5th Cir. 1991); *In re Incident Aboard the D/B Ocean King*, 877 F.2d 322, 323–24 (5th Cir.1989); *Marvel v. United States*, 719 F.2d 1507, 1515, n. 12 (10th Cir.1983). To correct this error, the Court will herein make additional independent findings of fact, and conclusions of law, and will rule upon the instant motions accordingly.

On August 12, 1983, Bennett and his then wife executed a Note and Mortgage ("mortgage") in the amount of $140,000 in favor of the Federal Land Bank of Springfield, predecessor-in-interest to Farm Credit. Soon after the loan closed, Bennett experienced repeated difficulty in making timely payments to Farm Credit, and this difficulty continued until 1987 when Farm Credit initiated a foreclosure action on the mortgaged property ("property"). Thereafter, Bennett applied the proceeds from the sale of inventory to pay the past due interest on the mortgage, whereupon Farm Credit agreed to discontinue the foreclosure action and reamortize all of Bennett's principal indebtedness.

By 1988, Bennett was again having difficulty making mortgage payments to Farm Credit. An installment payment due November 1, 1988 was not paid by Bennett until March of 1989. Around this time, Bennett approached Farm Credit to see if something further could be done to alleviate his repayment problems, whereupon Lyndon O'Dell, Farm Credit's branch manager, suggested that Bennett sell some of his property to reduce his mortgage debt. Although Bennett was reluctant to sell any portion of his property which his family had farmed for generations, he nevertheless attempted to do so.

Thereafter, Farm Credit extended the next installment payment deadline from November 1, 1989 to March 1, 1990. Bennett, however, was unable to make the payment due March 1, 1990. On August 3, 1990, Farm Credit sent Bennett a "Final Warning Letter" stating that legal proceedings would be initiated against him if he failed to place his loan in good standing by September 17, 1990, and indicating that a further restructuring of the loan might be

possible. Bennett did not respond to this letter and made no further payments to Farm Credit before September 17, 1990. On that date Farm Credit issued a letter "calling" due the entire amount of Bennett's indebtedness, which at that time was $153,275.39.

Thereafter, Bennett requested that Farm Credit grant a partial release of its mortgage lien on a parcel of property which Bennett had arranged to sell. Farm Credit granted the release, but informed Bennett that the balance of the loan was due in full and that the loan would not be reinstated. Upon obtaining the release, Bennett sold a parcel of property to Venice View Farms for $31,805.09, which amount he paid to Farm Credit on December 5, 1990.

Farm Credit had meanwhile commenced a foreclosure action on Bennett's property on November 1, 1990, and on February 27, 1991 obtained a Judgment of Foreclosure and Sale reflecting an outstanding loan balance of $129,507.05. Pursuant to the Judgment of Foreclosure and Sale, an auction of Bennett's property was scheduled to be held on April 2, 1991. However, when Bennett informed Farm Credit that he had arranged for the sale of another parcel of his property, to the Phillipses, the foreclosure sale was adjourned until April 30, 1991 to allow Bennett to consummate that sale.

Thereafter, the foreclosure sale was adjourned to August 13, 1991, to allow Bennett to close the sale to the Phillipses. To allow the sale to proceed, Farm Credit agreed to release its lien on the parcel of land to be sold on the condition that it receive all of the proceeds from the sale, which Bennett initially reported would amount to $88,000. When a problem with septic system on the land to be sold was discovered, the sale price was reduced to $85,000, yet Farm Credit remained prepared to release its lien on the property.

For reasons set forth in the Court's Memorandum–Decision, the sale to the Phillipses could not proceed unless Genoa Ag and Bennett's ex-wife also released their respective liens on the property. Genoa Ag initially agreed to release its lien.

However, when Bennett refused to pay it for approximately $3,700 of fertilizer which he had previously purchased, Genoa Ag refused to release its lien until it was paid the $3,700. Bennett thereafter asked Farm Credit to accept $3,700 less than the entirety of proceeds from the proposed sale, which he would pay to Genoa Ag for the release of its lien. Farm Credit, however, refused to release its lien unless it received the full amount of the sale proceeds. As a result, Bennett was unable to pay $3,700 to Genoa Ag and Genoa Ag refused to release its lien, thus thwarting the sale to the Phillipses, and allowing the property to be sold at a foreclosure auction on September 18, 1991.

Under the Eighth cause of action, Bennett argues that Farm Credit, by refusing to accept $3,700 less in proceeds from the proposed Phillips' sale, breached the duty of good faith and fair dealing implicit in the mortgage agreement between the parties. Specifically, Bennett contends that by refusing to accept $3,700 less in proceeds, Farm Credit improperly impaired Bennett's ability to perform his side of the contract, i.e., to pay his mortgage debt.

As acknowledged by the Court in its Memorandum–Decision, New York law imposes upon all contractual relationships an implied covenant of good faith and fair dealing, by which each party promises not to " 'intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.' " *See Carvel Corp. v. Diversified Management Group*, 930 F.2d 228, 230 (2d Cir. 1991) (quoting *Grad v. Roberts*, 14 N.Y.2d 70, 75, 248 N.Y.S.2d 633, 637, 198 N.E.2d 26, 28 (1964) other citations omitted); *Bank of New York v. Sasson*, 786 F.Supp. 349, 353 (S.D.N.Y.1992). In seeking to find support for the jury's advisory verdict rather than reaching its own independent conclusions of law, however, the Court overlooked the fact that the duty of good faith and fair dealing is "generally defined by the parties' intent and reasonable expectations in entering the contract", *Cross & Cross Properties v. Everett Allied Co.*, 886 F.2d 497, 502 (2d Cir.1989) (citations omit-

ted), and " 'is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.' " *Market Street Assocs. Ltd Partnership v. Frey,* 941 F.2d 588, 595 (7th Cir.1991) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank,* 908 F.2d 1351, 1357 (7th Cir.1990)).

■ An obligation of good faith and fair dealing cannot be implied where such obligation would be inconsistent with other express terms of the contractual relationship; it cannot frustrate the operation of an express contractual term bargained for at arms length. *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 679 (S.D.N.Y.1991) (citations omitted) (*"Nat-West"*). As stated in *NatWest, supra:*

> [A]lthough the obligation of good faith is implied in every contract, it is the terms of the contract which govern the rights and obligations of the parties. The parties' contractual rights and liabilities may not be varied, nor their terms eviscerated, by a claim that one party has exercised a contractual right but has failed to do so in good faith.

*Id.* (citing *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)); *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988); *Sharma v. Skaarup Ship Management Corp.,* 699 F.Supp. 440 (S.D.N.Y. 1988). *Accord Continental Bank N.A. v. Everett,* 760 F.Supp. 713 (N.D.Ill.1991) (citation omitted) *aff'd,* 964 F.2d 701 (7th Cir. 1992) ("implied duty of good faith provides a check against discretionary actions that are arbitrary or capricious, not those that are arguably justified under the contract and surrounding circumstances.").

■ In the instant case, the duty of good faith and fair dealing springs from the mortgage, which specifically refers to Farm Credit's right to seek acceleration of the debt in the event of default and to the possibility of foreclosure. The duty of good faith and fair dealing cannot serve to in any way impinge upon those express contractual rights. *See id.* When Bennett defaulted under the mortgage by failing to make the payment due March 1, 1990, Farm Credit from that point onward became entitled to take steps to collect the entire outstanding indebtedness, including by way of having the property sold at a foreclosure sale. After the Judgment of Foreclosure and Sale was entered Farm Credit had a right to have the property sold at foreclosure. If Farm Credit's refusal to accept $3,700 less in proceeds from the Phillips sale (and in ultimately refusing to release its lien) is actionable, it is not because such conduct violated the duty of good faith and fair dealing contained in the mortgage. Whatever else Farm Credit was doing, it was enforcing and protecting its right to have the property sold at foreclosure. Under the mortgage (and pursuant to the Judgment of Foreclosure and Sale) Farm Credit was entitled to exercise that right for any reason satisfactory to itself. *See Kham & Nate's Shoes,* 908 F.2d at 1356–57. (Court not willing to embrace notion that conduct may be "unfair" and "inequitable" even though it is allowed under the contract.) Farm Credit was not the cause of Bennett's inability to timely perform his mortgage obligations. It was not contractually bound to extract Bennett from his financial difficulties and was entitled to advance its own interests. *See M/A–Com Security Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir.1990) ("implied covenant [of good faith] does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's anticipated fruits from the contract." (citation omitted)); *In re Heartland Chemicals, Inc.,* 136 B.R. 503, 518 (Bankr.C.D.Ill.1992) (citing *Kham & Nate's,* 908 F.2d at 1358)). Therefore, as a matter of law it did not breach its duty of good faith and fair dealing *under the mortgage.*[2]

---

2. Bennett has never argued that Farm Credit's agreement to release its lien in exchange for the proceeds from the Phillips sale was itself a contract containing a separate duty of good faith which was breached by Farm Credit.

As the Second Circuit has recognized, "even after you have signed a contract, you are not obliged [by the duty of good faith and fair dealing] to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain." *Fasolino Foods Co. v. Banca Nazionale Del Lavoro,* 961 F.2d 1052, 1057 (2d Cir.1992) (quoting *Market Street Assocs. Ltd. Partnership v. Frey, supra* at 594). Despite this, Farm Credit did accommodate Bennett beyond the measure it was required to under the mortgage—even after Bennett had defaulted. Thus, Bennett now apparently contends that Farm Credit relaxed the terms of the mortgage, and was therefore barred by the theories of waiver and estoppel from enforcing its foreclosure rights.

 Bennett cites several cases for this potentially meritorious position, most notably *Federal Nat'l Mortgage Ass'n v. Miller,* 123 Misc.2d 431, 432, 473 N.Y.S.2d 743 (1984) ("mortgagee may waive a default by agreement and by acceptance of the installment due even after acceleration and commencement of proceedings"). However, waiver and estoppel have neither been pled nor raised by Bennett previously.[3] The singular issue before the Court under the Eighth cause of action is and has been whether Farm Credit breached its duty of good faith and fair dealing under the mortgage, not whether it should be generally estopped from exercising its foreclosure rights or whether its conduct constituted a waiver of those rights. A motion to alter or amend a judgment is not to be used to argue a new legal theory which could have been raised prior to entry of the judgment. *Federal Deposit Ins. Corp. v. World University, Inc.,* 978 F.2d 10, 16 (1st Cir.1992); *Havoco of America, Ltd. v. Sumitomo Corp. of America,* 971 F.2d 1332, 1336 (7th Cir.1992); *O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir.1992); *Wallace v. Brown,* 485 F.Supp. 77, 78 (S.D.N.Y.1979). Accordingly, the Court is powerless to consider Bennett's waiver/estoppel argument at this juncture.

Based upon the foregoing, it is unnecessary for the Court to consider Farm Credit's additional arguments. The Judgment previously entered by the Court on the Eighth cause of action must be vacated, and judgment thereon entered in Farm Credit's favor, dismissing the Eighth cause of action. *See National Metal Finishing v. BarclaysAmerican/Commercial, Inc.,* 899 F.2d at 123–24 (trial court could utilize Fed.R.Civ.P. 52(b) and 59(e) to alter findings of fact and conclusions of law even if it resulted in reversal of its initial decision). Though this essentially moots Bennett's motion to impose joint and several liability on Farm Credit and Genoa Ag under the Fourth and Eighth causes of action, the Court is nevertheless constrained to briefly address that motion.

 "When two or more tort-feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable." *Ravo by Ravo v. Rogatnick,* 70 N.Y.2d 305, 520 N.Y.S.2d 533, 535, 514 N.E.2d 1104, 1106 (Ct.App.1987). Here, Farm Credit and Genoa Ag did not act concurrently. Bennett, however, argues that they colluded to cause a single injury, i.e., the loss of his farm. Such a finding of collusion, however, is not sup-

---

**3.** The decision in *B.P.G. Autoland Jeep–Eagle, Inc. v. Chrysler Credit Corp.,* 785 F.Supp. 222 (D.Mass.1991), *vacated,* 799 F.Supp. 1250 (D.Mass.1992), the principal case relied upon by the Court in its Memorandum–Decision as support for the jury's advisory verdict, rests upon a hybrid basis of estoppel and good faith. That decision states that a lender who initially displays leniency in the administration of a loan may thereafter violate the good faith obligation if it suddenly abandons its lenient course of dealing. Apart from the question of whether Farm Credit *suddenly* changed a lenient course of dealing, the *B.P.G.* decision is largely incompatible with, *inter alia, Fasolino Foods Co., supra,* 961 F.2d at 1057 (parties' course of dealing did not create implied contract containing implied covenant of good faith). *See also Badgett v. Security State Bank,* 116 Wash.2d 563, 807 P.2d 356 (1991) (even though lender had been flexible with debtors in past by agreeing to restructure their farm loans, such course of dealing did not create obligation of good faith on part of bank to consider further restructurings.)

ported by a preponderance of the evidence.[4] Rather, the conduct of Farm Credit and Genoa Ag may be classified as, at best, "parallel activity." "Parallel activity, without more, is insufficient to establish the agreement element necessary to maintain a concerted action claim [based upon joint and several liability]." *Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d 487, 541 N.Y.S.2d 941, 946–47, 539 N.E.2d 1069, 1074–75 (Ct. App.1989).

More importantly, even if it were determined that Genoa Ag and Farm Credit were joint tort-feasors, joint and several liability could not be imposed in this instance because Farm Credit and Genoa Ag were not joined as defendants under either the Fourth, Eighth or Eleventh causes of action. Authority exists for the proposition that joint and several liability may be imposed without being pled, if the "interplay of the separate torts was pleaded with sufficient clarity."[5] *See Tcherepnin v. Franz*, 424 F.Supp. 778, 781–82 (N.D.Ill.1976). This cannot be extended, however, to allow for the imposition of joint and several liability against defendants not made a party to a cause of action. Such an extension would raise due process concerns. For this reason, it is well established that "joint tort-feasors who are not parties to an action may not be adjudged to pay any portion of the damages." 74 Am.Jur.2d Torts § 71 (citing *The Atlas*, 93 U.S. 302, 317, 23 L.Ed. 863 (1876) ("Co-wrong-doers, not parties to the suit, cannot be decreed to pay any portion of the damage ...")).

Thus, joint and several liability cannot be imposed under any causes of action set forth in Bennett's complaint because each cause of action was asserted against a single defendant. Moreover, Bennett cannot argue that Farm Credit and Genoa Ag were made parties to what was

essentially a single conspiracy cause of action, for which they may be held jointly and severally liable. An allegation that separate wrongs were all done in furtherance of a conspiracy to deprive a plaintiff of his property does not change the essential character of separate causes of action into a single cause of action. *Bob v. Hecksher*, 256 N.Y.S. 126, 235 A.D. 82, 83 (1932); *Raddatz v. United States*, 750 F.2d 791, 795 (9th Cir.1984).

Therefore, based upon the foregoing, it is

ORDERED, that the findings of fact contained in the Court's Memorandum–Decision as they relate to the Eighth cause of action are hereby amended and supplemented, pursuant to Fed.R.Civ.P. 52(b), by the incorporation of those additional findings of fact contained herein; and it is further

ORDERED, that the conclusions of law contained in the Court's Memorandum–Decision as they relate to the Eighth cause of action are hereby amended, pursuant to Fed.R.Civ.P. 52(b), to reflect only those conclusions of law contained herein; and it is further

ORDERED, that the Judgment on the Eighth cause of action in favor of Bennett is hereby vacated pursuant to Fed.R.Civ.P. 59(e) and 60(b)(6); and it is further

ORDERED, that judgment shall be entered dismissing the Eighth cause of action; and it is further

ORDERED, that Bennett's motion to impose joint and several liability upon Farm Credit and Genoa Ag under the Fourth, Eighth and Eleventh causes of action, is denied.

---

**4.** The question of collusion was presented to the jury under the fifth cause of action, pursuant to which it rendered an advisory finding that Farm Credit and Genoa Ag colluded to achieve some of the "results" of the foreclosure sale. In its Memorandum–Decision analysis of the Fifth cause of action, the Court's statement that the parties "may have colluded to force Bennett's property into foreclosure" did nothing more

than to highlight the irrelevancy of such finding under that cause of action.

**5.** Unlike the waiver/estoppel argument, Bennett did raise the issue of joint and several liability prior to entry of the Judgment on the Eighth cause of action.